CASE 17—AGREED CASE—MAY 23.

# Barbour v. City of Louisville.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. CONSTRUCTION OF STATUTES—FINES AND FORFEITURES IN CITY OF LOUISVILLE.—Where *particular* words of a statute are followed by those of a *general* character, the latter are to be restricted to objects of the same kind as those particularly mentioned.

"An act to amend the charter of the city of Louisville" provided for the imposition of a fine *by the city court* for any injury done to any of the public ways in the city, and provided further, that "all such fines, as well as the fines for all other misdemeanors committed in the city of Louisville," should, when collected, be paid into the treasury of the city. *Held*—That the general words refer to fines imposed by the *city* court for offenses other than injuries to the public ways, and not to fines imposed by the circuit court.

2. A LAW IS TO BE CONSTRUED in the light of the settled policy of the State with reference to the subject-matter as indicated by previous legislation.

3. CONTEMPORANEOUS CONSTRUCTION by those procuring an act is to be regarded in construing it.

4. THE SPIRIT OF THE LAW and not the letter must control in its construction.

HELM & BRUCE, BROWN, HUMPHREY & DAVIE FOR APPEL-LANT.

1. The settled policy of the State has never authorized, nor has any legislative act ever authorized, fines and forfeitures of the circuit court to be given to the city of Louisville. (1 Morehead & Brown's Stats., pages 718, 719; 2 Morehead & Brown, pages 1113, 1417; Acts of 1827–8, page 208, and Elliott's Charter and Ordinances of Louisville, page 33; Acts of 1832–3, page 211, and Elliott's Laws and Ordinances, page 60; Acts of 1829–30, page 262, and Elliott's Charter and Ordinances, page 82; Acts of 1835–6, page 280, and Elliott's Charter and Ordinances, page 63; Acts of 1837–8, and Elliott's Charter and Ordinances, page 79; Loughborough's Digest of Statutes, pages 363, 528; 1 Revised Statutes, chapter 28, section 24; 2 Revised Statutes, sections 1, 5, 11, of article 6, chapter 55; General Statutes, pages 321, 578, 579, 580; Acts of 1850–51, volume 2, page 597, and Elliott's Charter and Ordinances, page 359; Elliott's Charter and Ordinances, pages 376, 378, 379–80; 2 Revised Statutes (Stanton's ed.), pages 530–3, and Acts of 1857–8, volume 1, page 76; Elliott's

Charter and Ordinances, pages 131, 260, 342; Acts, 1869–70, volume 2, page 30, and Lucas' Charter and Ordinances, page 5; Acts of 1876, volume 1, page 19, and General Statutes (Bullitt and Feland's edition of 1881), pages 883–4.)

2. As the "settled policy of the State" almost from its beginning has been that the fines and forfeitures earned by the circuit courts shall be paid to the trustee of the jury fund, an ambiguous expression in a "local and private" act should not be construed as working a sudden and radical change in that policy.

3. By the ordinary canons for construction of statutes, the act of March 29, 1882, can not be held to give to the city of Louisville the fines and forfeitures realized from the circuit court.

a. One of the rules for construing statutes is, that where particular words of a statute are followed by general words, the general words are to be restricted and confined to objects of the same character and kind as those specified. (Sedgwick on Statutory Construction, page 360, note Id., page 361; Bishop on Written Laws, section 245; McDade v. People, 29 Mich., 52; Hermance v. Board of Supervisors, 71 N. Y., 487; Kennedy v. Foster, 14 Bush, 482.)

b. Another rule of statutory construction is, that it is not the *letter* of the statute, but the *spirit* of it that prevails. (Mason v. Rogers, 4 Littell, 377; Phillips v. Pope's Heirs, 10 B. M., 172; Bailey v. Commonwealth, 11 Bush, 688; Brown v. Thompson, 14 Bush, 538; Brewer v. Blougher, 14 Peters, 198; United States v. Kirby, 7 Wall., 483; Bullard v. Bank, 18 Wall., 589.)

c. Another canon of construction is, that implied repeals are not favored. (Taylor v. Shields, 5 Litt., 297; E. & P. R. R. v. Trustees of Elizabethtown, 12 Bush, 237; Commonwealth v. Weller, 14 Bush, 224; 112 U. S., 549.)

d. Another rule of construction is, to adopt the contemporaneous construction put upon the act by those who procured it and who were to execute it. (Collins v. Henderson, 11 Bush, 75; Sedgwick on Statutory Construction, page 213; *Idem.*, Pomeroy's note, page 227; Chicago v. Sheldon, 9 Wall., 54; Commercial Bank v. City of New Orleans, 17 La. Ann., 190; United States v. Pugh, 99 U. S., 269; United States v. Moore, 95 U. S., 763.)

4. If the act of 1882 means what the court below has decided it means, it is unconstitutional and void, because it relates to a subject not expressed in the title. (Pennington v. Woolfolk, 79 Ky., 20; Cutlett v. The Sheriff, 3 W. Va., 588; People v. Hill, 35 N. Y., 435; Grubbs v. State, 24 Ind., 297; Childs v. Monroe, 4 Met., 75; O'Donohue v. Aiken, 2 Duv., 478; Rushing v. Siebree, 12 Bush, 199; Jones v. Thompson, 12 Bush, 394; Hedges v. Rennaker, 3 Met., 257; Hinds v. Rice, 10 Bush, 528; Fuqua v. Mullen, 13 Bush, 470.)

5. That construction should be put upon the act which would prevent it

Barbour v. City of Louisville.

from being of doubtful constitutionality. (Waller v. Martin, 17 B. M., 181.)

6. The sheriff was but the fiscal agent of the Commonwealth in collecting the fines and forfeitures and paying them over to the State's trustee of the jury fund, and being merely an agent and having paid over the money to the principal, or in obedience to the order of the principal, before suit was brought, he is not liable. (Webb v. MacAuley, 4 Bush, 12; Divine v. Harvie, 7 Mon., 439; Story on Agency, section 300; Commissioners v. Theobald, 17 B. M., 481.)

T. L. BURNETT for appellee.

1. "An act to amend the charter of the city of Louisville" is a title broad enough to admit of a provision in the act that fines collected for misdemeanors committed in the city shall be paid into the treasury of the city.

2. The history of legislation as to the fines collected for misdemeanors committed in the city of Louisville, shows that it was intended by the Act of 1882 that such fines should be paid into the treasury of the city. (Elliott's Laws and Ordinances, 46, 60, 61; section 9, article 5, charter of 1851; sections 42 and 59, charter of 1870.)

3. There are other rules for the construction of statutes of equal dignity and importance with the rule of "*ejusdem generis*," and that rule can not be applied if its application requires that all the other rules of construction be disregarded. (Bailey v. Commonwealth, 11 Bush, 688, 691.)

JUDGE HOLT delivered the opinion of the court.

The claim of the city of Louisville to the fines imposed by the Jefferson circuit court in misdemeanor cases arising within the city limits is based upon a legislative act, approved March 29, 1882, entitled "An act to amend the charter of the city of Louisville," and the fourth section of which reads thus:

"4. It shall be competent for the said city to institute or maintain an action for injury or damage done to any of the public ways in said city, and in addition thereto the person so injuring or damaging such public way shall be liable to a fine of not less than fifty dollars or more than one hundred dollars, and, on conviction thereof, in the city court of said city,

vol. 83.—7

shall be confined in the work-house of said city until such fine and the cost shall be paid by work at the rate of fifty cents per day, unless such fine and cost be replevied or otherwise paid; and all such fines, as well as the fines for all other misdemeanors committed in the city of Louisville, shall, when collected, be paid into the treasury of said city, and be subject to appropriation by the general council of said city."

It is urged upon the part of the city that the words, "and all such fines, *as well as the fines for all other misdemeanors committed in the city of Louisville*," show unequivocally that the fines and forfeitures of the *circuit* court in such cases belong to it; also, that it has been the settled policy of the State for many years to give to the city the fines for misdemeanors committed within its limits, whether imposed by the *circuit* or its *city* court. Upon the part of the State, however, it is claimed that its policy has been the reverse as to the judgments of the first-named court; and a brief review of it will serve to some extent as a guide to the proper construction of the law.

The first general law in this State (1 M. & B., 718) as to fines, provided that they should be applied in the same way as the county levies; and they were used to pay the expenses of the county, which included the costs arising from the holding of its circuit court.

By the act of February 14, 1820, fines imposed by the circuit court of a county were given to the public schools of the *Commonwealth* within such county, and not to any city in it. The first charter of the city of Louisville did not give to it the fines imposed by the

circuit court for offenses committed within the corpo-
rate limits, but only those of its mayor's court.

By the act of February 13, 1833, fines assessed by
the circuit court for misdemeanors committed within
the city were given, not to the city generally, but to
its public schools ; and this was done because by said
act a part of the *State's* public school system became
public city schools, and the *State's* public school
system in the city received the money. The act of
February 22, 1836, establishing the police court of the,
city, provided that the fines recovered in favor of
the Commonwealth in said court should be for the,
benefit of the public schools of the city ; and in con-
sideration thereof the city was annually to pay into
the Treasury of the *Commonwealth* "$1,200, in addi--
tion to the sum heretofore directed to be paid ;'"
and by its charter of 1851, it was for the same con-
sideration "to pay into the Treasury of this *Com-
monwealth* the like sum of $1,500." In 1838, the
mode of supporting the common schools was changed
from the precarious one of fines to that of taxation ;
and the law was then altered so that the trustee of
the jury fund of the circuit court received the fines
imposed by it, they to be applied by him in paying
the expenses of holding the court ; and from that
time until this action was brought, save a portion
of said period when the city court had exclusive
jurisdiction of such cases, the fines imposed by the
Jefferson *circuit* court for offenses committed within
the city limits of Louisville have been paid, not to
the city, but into the State Treasury or to the trus-
tee of the jury fund ; and by law any balance in his.

hands had to be paid to the *State* Treasurer by the first of January in each year.

The legislation upon the subject indicates that it has been the purpose and policy of the State to reserve to itself the fines and forfeitures of the Jefferson circuit court, to aid in the expense of holding it; and in the light of this policy we must examine the law now in question.

It is a rule of construction, that where *particular* words of a statute are followed by those of a *general* character, the latter are to be restricted to the objects particularly mentioned. If the act begins with words which speak of things or persons of an inferior degree and concludes with general words, the latter are not to be extended to anything or person of a higher degree. If a particular class is mentioned and general words follow, they must be treated as referring to matters of the same kind, thus subordinating general terms to the preceding particulars.

· It is said in Sedgwick on Statutory Construction, page 361: "Where general words follow particular words, the rule is to construe the former as applicable to the things or persons particularly mentioned. So a statute treating of persons or things of an inferior rank can not, by general words, be extended to those of a superior rank."

The "*particular*" words in the act of 1882 relate to fines by the *city* court for injuries to the public ways of the city, and if not paid the offenders are to be confined in the city work-house; and if the words "as well as the fines for all other misdemean-

ors committed in the city of Louisville," include fines
imposed by the circuit court, then the "*general*"
words of the act must be held to relate to those
inflicted by a superior court, and the punishment of
which reaches higher than confinement in the city
work-house; and the rule that the general words
must be held to relate to things *ejusdem generis* is
violated.

It is noticeable that the act is a *local* one; that
it does not in terms relate to the *circuit* court; that
it is an amendment to a charter, which, so far as it
relates to fines, speaks only of those imposed by
the *city* court; that it contains no repealing clause,
and does not purport to repeal the general law,
which provides that the fines of the circuit court
shall be paid to the trustee of the jury fund. The
latter court represents the State, and the city court,
the city; and the fines imposed by the former natu-
rally should aid in its support, or go to the State. If
the construction contended for by the city is correct,
then it follows that the State, or, in other words,
the other counties, must, by taxation, support the
circuit court of Jefferson county, while the city of
Louisville gets the benefit of the fines imposed by
that court. It should not be presumed that such
partial legislation was intended, or a repeal by im-
plication of the general law; and it does not seem
to us, since repeals by implication are not favored,
that such a construction should be given to the am-
biguous words of a local statute as to produce such
a result; but that the words "as well as the fines
for all other misdemeanors committed in the city

of Louisville," refer to fines imposed by the *city* court for other offenses than injuries to its public ways.

It is said, that if this be so, then the words are superfluous, because such fines, by the law already in force, belonged to the city; but an examination shows that they did not go generally into the city treasury, and were not subject to general appropriation by the general council of the city, as is the case by the act now under consideration, and that their use was, at least to some extent, limited; and this fact is to us a conclusive reason why all the fines imposed by the city court were present in the legislative mind, and were mentioned in this act.

The fines of the Jefferson circuit court amount annually to thousands of dollars. This act became operative on March 29, 1882, and yet the city never asserted claim to them until 1885. Contemporaneous construction by those procuring an act is to be regarded—*contemporania expositis est fortissima in lege;* and usage under a law, by those claiming a right under it, is often a safe interpreter.

It is said in Pomeroy's note to Sedgwick, p. 227:

"The practical construction given to the statute by the public officers of the State, and acted upon by the people thereof, is to be considered, and is, perhaps, decisive, in cases of doubt;" and in the United States v. Pugh (99 U. S., 269) the Supreme Court say:

"It is a familiar rule of interpretation, that in the case of a doubtful and ambiguous law, the contemporaneous construction of those who have been

called upon to carry it into effect is entitled to great respect."

Again, in the United States v. Moore (95 U. S., 763), the same court say :

"The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration, and ought not to be overruled without cogent reasons. The officers concerned are usually able men, and masters of the subject. Not infrequently they are draftsmen of the laws they are afterwards called upon to interpret."

Even if the letter of the law upon proper construction were opposed to the conclusion we have reached, yet it should not be permitted to kill the spirit of it ; the *will* of the Legislature, and not the *words* used by it, must control ; and we think there is no room to doubt but that the legislative intent in enacting the fourth section *supra* was to legislate only as to fines imposed by the city court of Louisville ; and any other construction of it would render its constitutionality at least questionable under that provision of our Constitution which provides that no law shall relate to more than one subject, and that shall be expressed in the title.

Judgment reversed, with directions to dismiss the action.