Clark's Run and Salt River Turnpike Road Co. v. Commonwealth.

CASE 86—PETITION EQUITY—FEBRUARY 1.

# Clark's Run and Salt River Turnpike Road Co. v. Commonwealth.

### APPEAL FROM BOYLE CIRCUIT COURT.

CONTEMPORANEOUS CONSTRUCTION OF STATUTES.—In the interpretation of a doubtful and ambiguous law the contemporaneous construction of those who have been called upon to carry it into effect is entitled to great respect.

Where the provisions of the charter of a turnpike road company were construed by the incorporators and officials of the company who

Clark's Run and Salt River Turnpike Road Co. v. Commonwealth.

procured the law, and who were charged with its proper execution, to permit the erection of gates at any points without regard to the distance apart, provided that tolls were to be collected of each person at a designated rate for each five miles of the road used, and that construction has been continuously acquiesced in for more than thirty years by the public and by the officials of the State and county who were charged with the duty of preventing a violation of the law, it is now adopted by the court in this proceeding by the Commonwealth to prevent the company from exercising the right claimed by it to maintain gates on its road at a distance less than five miles apart, although the court might, as an original proposition, have placed a different construction upon the charter, the intention of the Legislature not being free from doubt, and the construction adopted being an admissible one.

R. P. JACOBS FOR APPELLANT.

1. The appellant has the right under its charter to collect tolls at each of the gates near Parksville in the method stated in the pleadings. (Laws 1847–48, chap. 465, p. 389; Acts 1843–44, chap. 287, p. 57.)

2. The right claimed under the charter in this respect, and the construction placed upon it by the company in the exercise of that right for more than thirty years, has been acquiesced in by the State and the public, and this interpretation asserted so continuously and uninterruptedly for such length of time, of itself fixes a practical interpretation of the charter, and establishes a right in appellant company in the nature of a right by prescription now too late to call in question.

The right so claimed is one that may be acquired by prescription. (19 Am. & Eng. Enc. of Law, 24; Jamison v. People, 16 Ill., 257; s. c. 63 Am. Dec., 304.)

The appellant company is a corporation, public in its nature and purposes, and demanded by the wants of the public; and principles applicable to a municipal corporation are applicable to it. (People v. Maynard, 15 Mich., 463; Williams v. Turner, 7 Ga., 348.)

3. This is an action which calls into question the right of appellant to exercise a franchise, and the right of action, if any, accrued thirty years or more before the institution of this action, and the Commonwealth, under the statute, is barred of its alleged right of action. (Gen. Stats., chap. 71, art. 3, sec 10 )

The effect and operation of the statute is not as a bar only, but it also operates to confer title. (11 Ky. Law Rep., 820; Chiles v. Jones 4 Dana, 484; Jones v. Jones, 18 Ala., 248.)

WM. J. HENDRICK, ATTORNEY-GENERAL, R. J. BRECKINRIDGE AND FELIX G. FOX FOR APPELLEE.

1. A corporation possesses only such powers as are conferred upon it by its

charter, either expressly or as incident to its existence and legitimate action, and the charter is to be construed strictly against the corporation and liberally in favor of the public. (Maddox v. Graham, 2 Met., 72.)

2. The turnpike company had no. authority under its charter to erect the two so-called half gates instead of one gate. (Session Acts 1847–48, pp. 389, 390; Session Acts 1843–44.)

3. The statute of limitations is not applicable to actions such as this by the Commonwealth. (Board of Trustees, &c., v. The Auditor, 80 Ky , 341; State v. Pawtuxent Turnpike Co., 8 R. I., 521.)

4. The right or franchise of collecting tolls on a public highway can not be acquired by the lapse of time and the laches of public servants, nor in any other way than by legislative grant. (Commonwealth v. L. & H. T. R. Co., 6 B. M., 398 )

Cited in petition for rehearing: Chiles v. Calk, 4 Bibb, 555; Commonwealth v. McGowan, 4 Bibb, 64; Bank of Owensboro v. Western Bank, 13 Bush, 526; Mechem on Agency, sec 157; State v. Sharp, 27 Minn , 38.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

This action, in the nature of a *quo warranto*, was brought by the Commonwealth to prevent the exercise of a right claimed by the appellant to maintain certain toll-gates on its road at a distance less than five miles apart. By its answer the appellant justified the erection and maintenance of the gates upon the ground that it had the right to do so by virtue of the provisions of its charter, or if, upon a strict construction of the language, it might not have such right, yet that this right has been exercised continuously for more than thirty years, and had been acquiesced in by the State and the public for that length of time without complaint, and that this construction of the provisions of the charter asserted continuously and uninterruptedly for so long a time, itself fixed a practical interpretation of these provisions, and established a right in the company in the

nature of a right by prescription, now too late to call in question. A demurrer to this answer was sustained by the lower court, and the company declining to plead further, a judgment of ouster was rendered.

We learn from the record that one end of the company's road begins on the line between Marion and Boyle counties, and thence running eastwardly through the latter county for some sixteen miles, passing through the village of Parksville to the city of Danville. That a gate was erected at or near the beginning point indicated; another about six miles distant therefrom, at a point one mile west of the village named; another about three-fourths of a mile east of that village, and another about a mile west of Danville, the last one being about six miles from the gate east of Parksville. That the two gates immediately east and west of Parksville were established in the year 1860, and had been maintained continuously at the same places since that time, and that each of them was what is generally known as a half gate, and only half toll was collected thereat, the other two gates being full or whole gates. That there was, therefore, practically but three whole gates on the sixteen miles of road.

There is no complaint that too much toll is charged at any gate, but the maintenance of the two near the village is alleged to be greatly to the annoyance and bother of the citizens and travelling public generally.

Upon the subject of the erection of toll-gates, section 5 of the charter of the appellant, adopted in 1848, provides as follows: "When the gate or gates shall be

erected, it shall and may be lawful for the president and directors to appoint as many toll-gatherers as they may deem requisite, and to collect and receive of every person or persons using said road, at each toll-gate, for each and every five miles they may use or travel on said road, the same rate of tolls as is collected on the Danville, Lancaster, &c., turnpike road."

This is the only reference to toll-gates in the appellant's charter, though, as we shall presently see, certain sections of another charter are referred to and made part of the act of incorporation. By this provision it can not be said that the gates are required to be five miles apart. When erected, as many toll-gatherers as might be deemed requisite were to be appointed to collect at each gate, from every person, the same rate of toll for each and every five miles of road used or traveled over as was collectible by a certain other company. It is at least an admissible construction to say that under the language used the gates might be erected at any points, provided that tolls were to be collected of each person at a designated rate for each five miles of the road used, and this could be done without regard to the distance the gates were apart. This was the construction of the provisions of the charter adopted by the incorporators and officers of the company some thirty-four years before this suit was brought, questioning for the first time the correctness of the interpretation; and this construction was acquiesced in, and, in effect, adopted, by the public and the officers of the State and county for the length of time mentioned. We say acquiesced in and adopted by these because there are ample provisions punishing the company and its

agents and employes for collecting illegal tolls, both under the charter and under the general law, and it is not to be. supposed that the public and the officers cognizant of the facts would have remained inactive save for the belief that the right to so maintain the gates in question was authorized under the company's charter. We have, therefore, a construction adopted and continuously acquiesced in for more than thirty years by the incorporators and officers of the company who procured the law, and who were charged with its execution, and by the public, who were largely interested in the question, and by the officials of the State and county who were charged with the duty of preventing a violation of the law, including the illegal collection of tolls.

We are referred, however, to the charter of the Danville & Hustonville Turnpike Road Company, adopted in 1844, and referred to as part of appellant's charter. This charter provides that, "So soon as five miles of said road, continuously, shall be completed, three justices of the peace * shall be called on to examine the work, and if they shall certify that said road is made in conformity with the provisions of this act, the certificate shall be recorded in the office of the county court of said county, and the president and directors may cause a toll-gate to be erected across said road, and may collect tolls and duties hereinafter granted," &c. In case such disinterested justices could not be found, then commissioners should make the examination, "and if it shall be their opinion that the road, or any five miles of it, at any one part, is completed according to the provisions of this act, their

report shall be recorded in said circuit or county court, and the judge or court shall enter of record how many gates the company may erect; whereupon, it shall be lawful for the company to erect a toll-gate for every five miles of turnpike road they have so completed, at any one time, and at such places as to them may seem most eligible."

This is hardly more explicit than the provisions of the appellant's charter proper. Of course, five miles of the road must have been completed before any gate could be erected, but when the road, or "*any five miles of it,*" at any one part, was completed according to the provisions of the act, the judge or court was directed to enter of record "*how many gates* the company may erect," and it was lawful for the company to erect a toll-gate for every five miles of completed road "*at such places as to them may seem most eligible.*"

The petition alleges that "said highway extends in length fifteen or *more* consecutive miles in the county of Boyle," &c. So, for aught we learn from the pleader, there are four gates on fifteen or *more* miles, and this may not be in violation of the charter even as construed by the appellee.

If we were called on to construe these acts without regard to the construction adopted by all concerned some thirty odd years ago, we might readily agree with the appellee.

What we conclude is, that the construction contended for by the appellant is not an inadmissible one, and, in view of this contemporaneous interpretation of the meaning of the acts, and the long and

continued usage under the law by those claiming a right under it, we think their construction the proper one.

Mr. Pomeroy says: "The practical construction given to the statute by the public officers of the State, and acted upon by the people thereof, is to be considered, and is, perhaps, decisive in cases of doubt." (Note to Sedgwick, p. 227.)

In United States v. Pugh (99 U. S., 269), it is said: "It is a familiar rule of interpretation, that in the case of a doubtful and ambiguous law, the contemporaneous construction of those who have been called upon to carry it into effect is entitled to great respect."

In Barbour v. City of Louisville, 83 Ky., 95, this rule is fully recognized, and the meaning of language hardly to be deemed ambiguous was controlled by the construction put on it by those who procured the law under consideration, and who were charged with its execution.

In Collins v. Henderson, &c., 11 Bush, 74, considerable stress was laid upon the light in which a law was received and held by the contemporary members of the profession.

It is not necessary to notice minor errors in the judgment complained of.

For the reason indicated, the judgment is reversed for proceedings consistent with this opinion.