Case 32.—SUIT BY THE COMMONWEALTH AGAINST R. E.
GREGORY TO RECOVER A PENALTY FOR DOING
BUSINESS AS AGENT FOR AN INSURANCE COMPANY
WITHOUT A LICENSE.—October 18.

## Commonwealth v. Gregory.

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for defendant. ·Plaintiff appeals. Affirmed.

1. Insurance — Licenses for Agents — Domestic Corporations—
   Agents for foreign insurance companies, being expressly re-
   quired by Ky. Stats. 1903, secs. 634, 681, 694, to obtain a li-
   cense, and there being no express provision on the subject
   as to agents of domestic companies, they are not required
   to obtain licenses; sec. 761, providing that there shall be
   collected "for license to each agent of life companies, * * *
   $5," referring only to such agents as are required by pre-
   vious sections to obtain a license, and sec. 627, relative to
   domestic companies, providing that, if a company fails to
   make a report as required, it shall be fined and the license
   issued to its agents shall be revoked, and sec. 753, provid-
   ing that the commissioner, if of opinion that a domestic in-
   surance company is insolvent, etc., shall revoke all licenses
   issued to it or its agents, either having inadvertently as-
   sumed that such agents were required to obtain licenses,
   or having reference to the certificate required by sec. 620
   to authorize a domestic company to do business.
2. Statutes—Contemporaneous Construction—The statutes of the
   State admitting of the construction that they do not require
   a license for agents of domestic insurance companies, the
   fact that for 25 years after their enactment the officers of
   the State required no such license to be paid, and that none
   was paid, is a binding contemporaneous construction.
3. Constitutional Law—Privileges and Immunities—The statutes
   requiring foreign insurance companies only to take out li-
   censes for their agents as a condition to doing business in

the State, do not contravene Const. U. S., art. 4, sec. 2, de-
claring that the citizens of each State shall be entitled to,
all privileges and immunities in the several States; a cor-
poration not being a citizen.
4. Same—Equal Protection of Laws—Neither do such statutes con-
   travene Const. U. S., Amend. 14, forbidding any State from
   denying to any person the equal protection of the laws.
5. Same—Interstate Commerce—Nor do they violate the clause
   of the United States Constitution giving Congress power to
   regulate interstate commerce; insurance not being commerce.

N. B. HAYS, Attorney General, and CHAS. H. MORRIS for
appellant.

### DISCRIMINATION.

Ky. Stats., secs. 635 and 697, provide that all insurance com-
panies are made subject to all the penalties and are entitled to
all the benefits of this law the same as if organized thereunder.
Hence we say that, notwithstanding the State may prohibit any
company which it desires so to do from entering the State,
yet after it has once been admitted, its agents can not be dis-
crimianted against by requiring them to pay a license fee, which
is not required of agents of domestic companies.
This contention is clearly sustained by the case of Simrall v.
City of Covington in 29 Am. State Rep., 398, and the authorities
therein cited.

### AUTHORITIES CITED.

Ky. Stats., chap. 32, art. 4, secs. 617 to 762; Gen. Stats. 1888,
Appendix, p. 44, sec. 38 (Act of March 10, 1870); Simrall v. City
of Covington, 29 Am. State Rep., 398.

HELM, BRUCE & HELM for appellee.

If it is the law that a domestic insurance company is required
to procure a license for each of its agents, the Commonwealth has
been thirty-five years in discovering this fact; for the statute
has existed this length of time in substantially the same form as
it now exists on this subject, and never until within the last few
months has the State ever demanded that an agent of a domestic
insurance company take out a license for doing business in Ken-
tucky; but it has been the construction of the law by both the
State, through its officers and by the insurance companies oper-
ating under the law, that while the statute required a foreign
insurance company to procure a license for each of its agents

doing business in Kentucky, yet that this requirement did not apply to a domestic insurance company.

### AUTHORITIES CITED.

Harrison v. Commonwealth, 83 Ky., 162; Barbour v. City of Louisville, 83 Ky., 95; Clark's Run, &c., Turnpike Co. v. Commonwealth, 96 Ky., 525; United States v. Pugh, 99 U. S., 269; Louisville Tobacco Warehouse Co. v. Commonwealth, 106 Ky., 171; Paul v. Virginia, 8 Wall., 168; New York Life Ins. Co. v. Cravens, 178 U. S., 401; Philadelphia Fire Association v. New York, 119 U. S., 110; Bank of Augusta v. Earle, 13 Pet., 519, 598; Lafayette Ins. Co. v. French, 18 How., 404; Liverpool Ins. Co. v. Massachusetts, 10 Wall., 566; Doyle v. Continental Ins. Co., 94 U. S., 535; Cooper Mfg. Co. v. Ferguson, 113 U. S., 727; Ducat v. Chicago, 10 Wall., 410.

OPINION BY JUDGE NUNN—Affirming.

This suit was brought in the form of a penal action by the Commonwealth of Kentucky against R. E. Gregory, who was an agent of the Citizens Life Insurance Co. of Kentucky, a domestic corporation, in which the prayer of the petition is for a judgment for a penalty of $75 against the appellee for doing business as the agent of the Citizens' Life Insurance Co. without having first procured a license as such agent. The purpose of the suit was to determine whether or not a domestic insurance company—that is, an insurance company created under the laws of Kentucky—is required to procure a license for each of its agents. The lower court determined that such licenses were not required, and the Commonwealth has appealed.

It is admitted by the Commonwealth that no licenses have ever been required of the agents of domestic insurance companies previous to the institution of this action. This action was instituted for the purpose of obtaining a construction of the present statutes upon the subject. We have examined

the statutes relative to this question, which have been enacted during the last 25 or 30 years, and we find no material change in them with reference to the question involved on this appeal. Chap. 32, art. 4, from sec. 617 to sec. 762, inclusive, of the Ky. Stats. of 1903, contain the provisions of the private corporation laws by which this liability must be determined. We have not been able to find, nor have we been cited to, any provision of the statutes which requires an agent of a domestic insurance company to pay a fee and obtain a license. Upon the other hand, we find three secs., viz., 634, 681 and 694, which expressly require the agents of foreign insurance companies doing business in this State to obtain a license before transacting any business. The fact that the General Assembly enacted the three sections referred to, requiring that license should be obtained by the agents of foreign insurance companies, and failed to enact any provision requiring the agents of domestic companies to obtain a license, is convincing that it was not the intention of the General Assembly that agents of domestic companies should be required to obtain a license. In other words, it was the intention of the Legislature that they should have the advantage in that respect.

The appellant refers to sec. 761, and contends that this section applies to the agents of all companies, both foreign and domestic. We quote that part of it necessary to an understanding of the proposition: "There shall be collected by the commissioner and paid into the State Treasury, to the credit of the insurance department, the following fees: * * * For license to each agent of life companies, and certificate of seal of office for each $5." * * * This section evidently refers to such agents as were required by the previous sections to obtain a license,

and not to those who were not required to obtain
them. The same may be said of sec. 640. If the
contention of the Commonwealth be correct, that
this section applied to the agents of all companies,
it was useless and folly in the General Assembly
to require in secs. 634, 681 and 694 that agents of
foreign companies be required to obtain a license.

It is the further contention of the Commonwealth
that by secs. 627 and 753 the agents of domestic
companies are required to obtain a license. There
is some plausibility in this contention. By the first
section named it is provided that, if the company
fails to make a report as required in that section, it
shall be punished by a fine, and it shall also be the
duty of the commissioner to revoke the license issued
to agents, etc. By the second section it is provided:
"If, upon examination, he (commissioner) is of
opinion that any domestic insurance company is
insolvent, or has exceeded its powers, or has failed
to comply with any provision of law, * * * he shall
revoke or suspend all licenses issued to it or its
agents," etc. By these sections it would seem that
when the General Assembly enacted them it was
under the impression that it had required such
agents to obtain a license. But in fact it had not.
It is clear to our minds that the words "its agents,"
were used in these two sections by inadvertence, or
that they had reference to the revocation of the cer-
tificate—i. e., license—as mentioned in sec. 620. The
Commonwealth is unable to point out any provision
of the statutes requiring domestic insurance compa-
nies to take out license for their agents, and its con-
tention that a license is required of such agents is
based solely upon mere inference and implication in
the statutes, such as we have indicated.

But, if there is any doubt upon this question, it

is obliterated by the long-continued contemporane-
ous construction of these statutes, covering the period
of at least twenty-five years or more; participated in
by all the officers of the State engaged in executing
this law, as well as by the insurance companies and
their agents operating under it. The answer of ap-
pellee in this case pleads expressly that it has al-
ways been the construction placed upon these stat-
utes by the officers of the State until within the last
few months, and by insurance companies created by
the laws of this State, that domestic insurance com-
panies were not required to procure license for their
agents, and that never until within the last few
months did the State of Kentucky ever demand or
require a license of an agent of a domestic company,
nor issue a license to such an agent, nor receive any
license fee from such an agent. These allegations of
the answer were admitted by the demurrer to be
true.

In the case of Harrison v. Commonwealth, 83 Ky.,
162, 7 Ky. Law Rep., 74, this court held that the
statute allowing the county assessor "fifteen cents
for each person's list of taxable property" should
be construed as allowing him 15 cents for each name
of a person returned on the assessor's book, whether
he had any taxable property or not. And it reached
this conclusion largely on account of the long-contin-
ued contemporaneous construction of the statute to
this effect by the officers of the law. Speaking on
that subject, the court said: "The very fact that per-
sons, and even courts, are differing as to its mean-
ing, tends strongly to show that it is at least of
doubtful import. It is alleged in the answer, and
admitted by the demurrer to it, that the State,
through its county courts and its executive depart-
ments, has for many years allowed and paid for

each list, whether it embraced property or not. The executive branch of a government must necessarily give a construction to the laws which it must exe- cute; and, if its construction has been followed for years, and in view of and without interference by the lawmaking power, then such contemporaneous and long-continued construction should not be de- parted from without the most cogent reasons. A long-continued practice under a statute, under such circumstances, ripens into an authoritative construc- tion of it.''

In Clark's Run, &c., Turnpike Co. v. Common- wealth, 96 Ky., 525, 16 Ky. Law Rep., 681, 29 S. W., 360, the court said: ''If we were called on to construe these acts without regard to the construction adopted by all concerned some thirty odd years ago, we might readily agree with the appellee. What we conclude is that the construction contended for by the appellant is not an inadmissible one, and, in view of this contemporaneous interpretation of the meaning of the acts and the long and continued usage under the law by those claiming a right under it, we think their construction the proper one.'' (Barbour v. City of Louisville, 83 Ky., 95, 7 Ky. Law Rep., 17; Louisville Tobacco Warehouse Co. v. Commonwealth, 106 Ky., 171, 20 Ky. Law Rep., 1747, 49 S. W., 1069, 57 L. R. A., 33.)

The Commonwealth makes the point that if a do- mestic insurance company is permitted to do busi- ness in the State without having to take out and pay for a license for each agent through whom it does business, while a foreign insurance company doing business in the State is required to take out and pay $5 for a license to each agent through whom it does business in the State, this is an unlawful and unconstitutional discrimination. In this the Com-

monwealth is in error, as has been repeatedly decided by the Supreme Court of the United States. In the case of Paul v. Virginia, 8 Wall., 168, 19 L. Ed., 357, the State of Virginia required that all foreign insurance companies should make a certain deposit of bonds with the State, as a condition precedent to the issue of license to do business in the State, whereas no such requirement was made of domestic companies. Paul, an agent of a foreign company, applied for a license, complying with all the provisions of the law except that as to the deposit of bonds. On this ground a license was refused. He then proceeded to do business without a license, whereupon he was indicted, convicted and fined under the statutes. He appealed to the Supreme Court of the United States, insisting that the Virginia statutes were in violation of sec. 2 of art. 4 of the Federal Constitution, which provides that "the citizens of each State shall be entitled to all privileges and immunities in the several States," and that it was also in violation of the commerce clause of the Constitution, which gives Congress the power to regulate interstate commerce. The Supreme Court answered the first point, to wit, that the statute was a violation of the section providing that the citizens' of each State shall be entitled to all privileges and immunities of citizens of the several States, by holding that a corporation, within the meaning of this section of the Constitution, is not a citizen; and it answered the second point, to wit, that the statute was an attempt to regulate interstate commerce, by holding that insurance is not commerce. On the position that a corporation is not a citizen, within the meaning of the section of the Constitution referred to, this case is approved as late as the case of Blake v. McClung, 172 U. S., 239, 19 Sup. Ct., 165,

43 L. Ed., 432, and on the proposition that insurance is not commerce it is approved as late as New York Life Ins. Co. v. Cravens, 178 U. S., 401, 20 Sup. Ct., 962, 44 L. Ed., 1116.

Again, it is contended that a statute of this kind, governing foreign insurance companies and making provisions for them different from those made as to domestic insurance companies, is a violation of the fourteenth amendment to the Federal Constitution is conclusively settled by the case of Philadelphia Fire Association v. New York, 119 U. S., 110, 7 Sup. Ct., 108, 30 L. Ed., 342, in which the appellant in that case insisted that after it had begun to do business in New York, and was recognized as rightfully doing business there, the statute was passed which was applicable to it as a foreign company, but not to domestic companies. It insisted, therefore, that this was in violation of the fourteenth amendment to the Constitution, which forbids any State from depriving any person of life, liberty or property, or denying to any person the equal protection of the laws. The Supreme Court denied this proposition, and said: "But we are unable to take that view of the case." It then proceeded to quote and approve the case of Paul v. Virginia, supra, as follows: "Having no absolute right of recognition in other States, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those States may think proper to impose. They may exclude the foreign corporation entirely, they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment would best promote the public

interests. The whole matter rests in their discretion.''

The court, continuing, said: ''The same rulings were followed in Ducat v. Chicago, 10 Wall., 410, 19 L. Ed., 972, where it was said that the power of a State to discriminate between her own corporations and those of other States desirous of transacting business within her jurisdiction being clearly established, it belonged to the State to determine as to the nature or degree of discrimination, subject only to such limitations on her sovereignty as may be found in the fundamental law of the Union.''

The court referred to several authorities to the same effect, and continued: ''The State, having power to exclude entirely, has the power to change the conditions of admission at any time for the future, and to impose as a condition the payment of a new tax, or a further tax, as license fee. If it imposes such license fee as a prerequisite for the future, the foreign corporation, until it pays such license fee, is not admitted within the State or within its jurisdiction. It is outside at the threshold seeking admission, with consent not yet given. * * * By going into the State of New York in 1872 it assented to such prerequisite of its admission within the jurisdiction of New York. It could not be of right within such jurisdiction until it should receive the consent of the State to its entrance therein under the new provisions, and such consent could not be given until the tax, as a license fee for the future, should be paid.''

For these reasons, the judgment of the lower court is affirmed.