Truman **HOLLINGSWORTH** d/b/a Tompkinsville Transfer Company, Appellant,

v.

**SKAGGS TRANSFER, INC.,** Department of Motor Transporation, Commonwealth of Kentucky, and Ben M. Combs, Commissioner, Appellees.

Court of Appeals of Kentucky.

June 9, 1967.

Robert M. Pearce, Bowling Green, for appellant.

Rudy Yessin, Frankfort, Virgil Gaitskill, Dept. of Motor Transportation, Frankfort, for appellees.

EDWARD P. HILL, Judge.

This appeal is from a judgment upholding an order of the Commissioner of Motor Transportation prohibiting appellant Truman Hollingsworth, doing business in the name of Tompkinsville Transfer Company, from serving the town of Glasgow, Kentucky, from Louisville, Kentucky, in the motor freight business.

Appellee Skaggs Transfer, a corporation, initiated the controversy by filing with the Department of Motor Transportation a complaint against appellant seeking to prohibit appellant from serving the town of Glasgow from Louisville.

We shall adopt a large portion of the well-reasoned and able order of the Department of Motor Transportation.

On June 14, 1937, the (then) Division of Motor Transportation granted to Hagan, Landrum, Cook and Company of Tompkinsville, Kentucky, the certificate referred to herein as Common Carrier Certificate No. 358, which is the subject of this proceeding. This certificate of public convenience and necessity granted to Hagan and others authority "to operate a common carrier motor freight line from *LOUISVILLE, KENTUCKY, TO THE KENTUCKY-TENNESSEE STATE LINE VIA GLASGOW AND TOMPKINSVILLE SERVING ALL POINTS SOUTH OF GLASGOW, KENTUCKY, TO THE KENTUCKY-TENNESSEE STATE LINE VIA TOMPKINSVILLE AND SERVING ALL POINTS NORTH OF THE KENTUCKY-TENNESSEE STATE LINE TO GLASGOW VIA TOMPKINSVILLE; AND RESTRICTED FROM HANDLING ANY TRAFFIC FROM GLASGOW TO LOUISVILLE AND INTERMEDIATE POINTS."*

Complicating our interpretation of the above authority is the fact that in the same order, in the paragraph immediately following, another authority was granted which is not involved in this litigation except as it may shed light upon the interpretation of Certificate 358. This other authority granted to Hollingsworth provided that:

"[A] certificate of public convenience and necessity to operate a motor freight line between *LOUISVILLE AND THE KENTUCKY-TENNESSEE STATE LINE VIA GLASGOW, KENTUCKY, AND TOMPKINSVILLE, KENTUCKY, SERVING ALL POINTS FROM GLASGOW SOUTH TO THE KENTUCKY-TENNESSEE STATE LINE AND ALL POINTS NORTH FROM THE KENTUCKY-TENNESSEE LINE TO AND INCLUDING GLASGOW, KENTUCKY, VIA TOMPKINSVILLE, KENTUCKY BUT RESTRICTED FROM SERVING ANY POINTS BETWEEN LOUISVILLE AND GLASGOW AND INCLUDING GLASGOW FROM LOUISVILLE."*

Counsel for appellant argues that the specific restriction contained in the latter authority was worded "but restricted from serving any points between Louisville and Glasgow and including Glasgow from Louisville," while the specific restriction contained in Certificate 358 was worded "and restricted from handling any traffic from Glasgow to Louisville and intermediate points." Counsel for appellant states:

"It stands to reason that if the director was attempting to impose the same restriction on Hagan, Landrum, Cook and Company as was imposed on Gid Hollingsworth in this order, that identical language or similar language should have been used. This the director did not do. One application was restricted 'from' Glasgow 'to' Louisville; the other 'between' Louisville and Glasgow and including Glasgow. This language is so

dissimilar insofar as its restrictive nature is concerned that no one could seriously argue that the director was attempting to impose the same type restriction on both applicants."

In considering this argument, we must first return to the first portion of the authority covering the appellant's southbound operation, which the appellant would have us read "serving all points south *from* Glasgow, Kentucky, to the Kentucky state line," thereby including Glasgow in its southbound authority. However, in construing a point to point authority, the interpreter must have a point of beginning and the phrase, "all points south" standing alone gives us no point of beginning since the term "south" is nothing more than a direction. We must, therefore, extend this phrase to read "serving all points south from Glasgow, Kentucky," arriving at the first service point south of Glasgow as the point at which the appellant may begin to render service out of Louisville, Kentucky.

■ It should be remembered that Director Moore's order was issued in the year 1937. Specific meanings for particular words and the use of tried and proven clauses to grant or restrict motor carrier authority had not been developed to any degree even approaching the present level. It is our opinion that it was the intention of this order to grant the same authority to each applicant. The latter was more carefully restricted because the wording preceding the restriction might be given a broader interpretation than was intended had such a restriction not been employed. Such a restriction was not necessary in Certificate 358 because the service point description effectively imposed the same restriction.

There are other reasons for this conclusion. We have available to assist us the original application for Certificate 358 wherein the applicant stated:

"We accept restrictions *between Louisville, Kentucky and Glasgow, Kentucky,* but ask to serve intermediate points between Glasgow and Tompkinsville." (Emphasis added)

The transcript of the hearing on the application of Hagan, Landrum, Cook and Company consisted of the testimony of one of the applicant's witnesses questioned by Director Moore. This witness stated:

"We want to operate over Highway 63 to Glasgow. We want to serve all points between Glasgow and Tompkinsville and go on to Louisville; but we don't want to serve any points between Glasgow and Louisville and then back from Louisville via Glasgow; and do not want to serve any between Louisville and Glasgow or in Glasgow, but want pick-up privileges from Glasgow to Tompkinsville and all points between Glasgow and Tompkinsville."

Director Moore in questioning this witness asked the direct question, "Do you ask to serve Glasgow out of Louisville?" to which the witness responded, "No; just out of Glasgow." On the basis of this and other testimony of a restrictive nature, Whitney Transfer Company, predecessor of appellee's authority, withdrew its protest.

The testimony introduced on behalf of Gid Hollingsworth for the authority hereinabove compared to Certificate 358 contains this exchange between Director Moore and Gid Hollingsworth:

"Q. Mr. Hollingsworth, go ahead and state your application, where you desired to operate and so on.

"A. Just exactly as Hagan, Landrum, Cook and Company except I have in my application to the Tennessee state line, and they don't have. I think you will find that.

"Q. You wish to operate from Louisville to Glasgow?

"A. That's right.

"Q. But be exempt from handling any freight between Louisville and Glasgow either way?

"A. That's right."

From the foregoing it seems clear that neither applicant sought authority to serve either Glasgow from Louisville or Louisville from Glasgow.

The notice of the hearing on the application for Certificate 358 indicated that applicant sought a common carrier truck certificate to operate a motor freight line from "Louisville, Kentucky, to Tompkinsville with restrictions between Louisville and Glasgow, asking to serve intermediate points between Glasgow and Tompkinsville * * *." We think this clearly indicated an intention to restrict the authority from serving Glasgow out of Louisville and that the authority resulting from the order of the director was not likely to exceed that indicated by the notice of hearing on the application for such authority.

Another significant circumstance supports the interpretation given Certificate 358 by the judgment appealed from, which is, a hearing held by the director on January 19, 1939, pursuant to a complaint by appellee's predecessor against appellant. This complaint was based on one shipment of freight from Louisville to Glasgow by appellant. At this hearing, appellant's witness Bedford denied authorizing this shipment and went on to say that, "If he (the truck driver) had asked us about it, we would have told him not to bring the wire." Whereupon Director Moore asked: "You will instruct your drivers in the future not to make any more deliveries into Glasgow?" To which Bedford answered: "Yes, sir." Although no formal order was entered in connection with this complaint, it is apparent the complainant was satisfied with the explanation and the position taken by the owners of Certificate 358.

Appellant next contends that regardless of the interpretation of Certificate 358 by "tacking" it with Certificate 465 (also held by him) he is authorized to render service between Glasgow and Louisville. Certificate 358 has been construed previously to authorize service between Louisville, Kentucky, and points south of Glasgow, but not including Glasgow. Certificate 465 authorizes the following service:

"From Glasgow, Kentucky, to Tompkinsville, Kentucky, through Barren and Monroe Counties. This Certificate grants permission to operate a motor freight line from Glasgow, Kentucky, to Tompkinsville, Kentucky, and return via Highway 63, with intermediate stopping points at Temple Hill, Mt. Herman and Mud Lick;. also from Tompkinsville to Center Point by Highway 100, with intermediate stopping point at Moshack; also from Tompkinsville, Kentucky, to Fountain Run, Kentucky, via Highway 100 and 63, with intermediate stopping points at Gamaliel and Flippin."

KRS 281.600 provides in part that "The Department of Motor Transportation shall exercise all administrative functions of the state in relation to motor transportation as defined in this chapter, and shall apply, as far as practicable, the administrative and judicial interₖretations of the Federal Motor Carrier Act * * *."

Apparently relying on this statute, appellant cites numerous decisions of the Interstate Commerce Commission authorizing "tacking" or consolidating authorities. We do not consider these authorities controlling in view of KRS 281.631(1) which provides:

"Every holder of a certificate of public convenience and necessity issued by the Department of Motor Transportation authorizing the transportation of persons or property for hire, which certificate authorizes service at a point that is also a point at which service is authorized under the terms of any other certificate of the same type held by the same person, is authorized to transport persons or property, as the case may be, for hire, from any point on either of said certificated

routes via such common point of service to any point on any other such connecting certificated route or routes, *unless such service be restricted by the terms of any of said certificates.*" (Emphasis added)

Subsection (2) of the above quoted statute makes the intention of the Legislature crystal clear by providing that:

"It is the purpose of this section to further clarify the provisions of KRS Chapter 281 relating to the application of the administrative and judicial interpretations of the Federal Motor Carrier Act to the administration of KRS Chapter 281."

■ It is concluded the restriction in Certificate 358 does prohibit the "tacking" of the two certificates. It is true the specific restriction in Certificate 358 limits service only "from Glasgow to Louisville and intermediate points." Yet, the positive statement of the authority itself accomplishes a limitation of service from Louisville to Glasgow by authorizing no service southbound from Louisville until reaching a point "south of Glasgow." It is concluded the holder of Certificate 358 is restricted from rendering any service between Glasgow and Louisville in either direction. Therefore, Certificate 358 may not be "tacked" at Tompkinsville or at any other point with Certificate 465 for the purpose of serving Glasgow from Louisville or vice versa.

■ Finally appellant contends he is authorized to render Louisville-Glasgow service by reason of the grandfather clause of KRS 281.665(1), which reads:

"Grandfathering of certain pre-1954 operations; exempted commodities.

"If any person or predecessor in interest was in bona fide operation as a motor carrier or a local cartage operator by motor vehicle on December 31, 1953, over the route or routes or within the territory for which application is made and has so continuously operated since that time, the department shall issue a certificate or permit granting such authority as the proof of past operations may warrant after a hearing held to determine that the applicant has so operated without requiring further proof that convenience and necessity will be served by such operation."

This statute clearly comtemplates the filing of an "application" for such authority. No application has been filed; hence, the statute does not apply.

The judgment is affirmed.

WILLIAMS, C. J., and MILLIKEN, STEINFELD, and OSBORNE, JJ., concur.

MONTGOMERY, J., dissents.

MONTGOMERY, Judge (dissenting).

I respectfully dissent because I feel that appellant's business, after twenty-eight years of unquestioned, continuous service to Glasgow, should not now be seriously disturbed by an interpretation of a certificate which is so ambiguously drawn. The certificate under which appellant operated during that period was issued June 14, 1937. No serious question was ever raised concerning its meaning until the present controversy. While I am not advocating certificate by prescriptive right, I do think that the doctrine of contemporaneous construction would require an acceptance of an interpretation of the language of the certificate to include appellant's right to serve Glasgow as it had done, unquestioned, for twenty-eight years.

The principle of contemporaneous construction has long been used in construing constitutional and statutory enactments when the language was ambiguous. Board of Education of Louisville v. Sea, 167 Ky. 772, 181 S.W. 670; Nichols v. Wells, 2 Ky. (Sneed) 255; City of Louisville v. Kesselring, Ky., 257 S.W.2d 599. No reason is perceived why such rule of construction should not apply to the certificate in question.

A particularly pertinent case of contemporaneous construction is Clark's Run & S. R. Turnpike Road Company v. Commonwealth, 96 Ky. 525, 29 S.W. 360, 16 Ky.Law Rep. 681, involving the construction of the charter of a turnpike company's right to erect toll gates. When the turnpike company's right was questioned in a quo warranto proceeding, it answered and " * * * justified the erection and maintenance of the gates, upon the ground that it had the right to do so by virtue of the provisions of its charter, or if, upon a strict construction of the language, it might not have such right, yet that this right has been exercised continuously for more than 30 years, and had been acquiesced in by the state and the public for that length of time without complaint; and that this construction of the provisions of the charter asserted continuously and uninterruptedly for so long a time itself fixed a practical interpretation of these provisions, and established a right in the company in the nature of a right by prescription, now too late to call in question."

It was therein held that a construction of the ambiguous provisions of the charter adopted by the incorporators and officers of the company for some thirty-four years which had been acquiesced in and, in effect, adopted by the public and the officers of the state and county for the length of time mentioned should prevail. In applying the principle of contemporaneous construction, this court upheld the right of the turnpike company to maintain toll gates as it had in the past. In doing so, it was pointed out that the practical construction given by those who enforce or those who carry into effect a charter is entitled to great respect and is perhaps decisive in cases of doubt.

I think the authorities cited require that the construction placed on Certificate Number 358 by appellant, other common carriers, the Department of Motor Transportation and its predecessors, and the public generally for twenty-eight years, whereby appellant was allowed to serve

Glasgow, should continue to be recognized as the accepted construction of an ambiguous certificate. A construction which works inequality and hardship will not be enforced unless such construction is mandatorily required by the language employed. Martin v. Gage, 281 Ky. 95, 134 S.W.2d 966, 126 A.L.R. 449. Such a construction of the certificate here is not mandatorily required.

Therefore, I feel that the majority opinion is in error.