106  165
121  262
e121  888
123   84
d123   87
j123  201
124  539

106   165
129   743

106  165
133  112
135  329

106  165
132  365

CASE 14—INDICTMENT FOR MISDEMEANOR—MARCH 14.

# The Louisville Tobacco Warehouse Co. v. Commonwealth.

APPEAL FROM FRANKLIN CIRCUIT COURT.

(The opinion in this case was delivered in response to a petition for a rehearing.)

CORPORATIONS—REPORT FOR FRANCHISE TAXES.—A private trading corporation not "having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons or performing any public service" is not required to make a report to the Auditor as a basis for the ascertainment of, and tax upon, its franchise.

HUMPHREY & DAVIE FOR THE APPELLANT.    (D. W. LINDSEY OF COUNSEL.)

1. The franchise tax statute (Ky. Stats., sec. 4077) does not embrace ordinary private business concerns incorporated.    Gordon v. Winchester Bldg. Assn., 12 Bush, 114; Com. v. Whipps, 80 Ky., 282; Williams v. Cammack, 61 Am. Dec., 513; Bouvier's Law Dictionary, title "Exclusive"; 26 Am. & Eng. Ency. of Law, 233; Thompson on Corps., sec. 2925 and note; Barbour v. City of Louisville, 83 Ky., 102; Harrison v. Com., 83 Ky., 162; Black on Interpretation of Statutes, p. 161; The Abbot's case, 98 U. S., 444; Barbour v. Board of Trade, 82 Ky., 653; Lancaster v. Clayton, 86 Ky., 373; Clark v. Louisville Water Co., 90 Ky., 515; Com. v. Makibben, 90 Ky., 384; McDonald v. Hobby, 110 U. S., 628; Nash v. Page, 80 Ky., 539; Franke v. Paducah Water Co., 88 Ky., 467; 29 Enc. of Law, p. 19; Western Union Telegraph Co. v. Norman, 77 Fed. Rep., 27.

(Upon this point counsel referred to brief on file in the case of Louisville & Jeffersonville Ferry Co. v. Com., 104 Ky., 726.)

2. The court below erred in holding the statute to mean that this company, if covered by the statute at all, was not entitled to receive any notice from the Auditor as to what form of tax blank the Auditor had prepared or adopted for the current year, and in

holding that this company was not entitled to have tax blanks furnished for it to file; and in holding that this company was not entitled to be first called on to make its returns before it could be considered as in criminal default and be fined.

(Counsel made additional points identical with those made in the case of Louisville & Jeffersonville Ferry Co. v. Com., 104 Ky., 726, and numbered in the report of that case from two to nine inclusive, with the same citations as there given.)

W. S. TAYLOR, ATTORNEY-GENERAL, FOR THE APPELLEE.

(Brief not in the record.)

ROBT. B. FRANKLIN, COMMONWEALTH'S ATTORNEY, ON THE SAME SIDE.

. (Brief not in the record.)

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

Most of the questions presented by the briefs in this case have been settled by the opinion recently delivered at this term in the case of Louisville & Jeffersonville Ferry Co. v. Com., 104 Ky., 726; [47 S. W., 877]. The sole question remaining for decision is whether a private trading corporation is required to make report to the auditor, as basis for the ascertainment of a tax upon its franchise.

The statute (Ky. St., section 4077) provides: "Every railway company or corporation and every incorporated bank, trust company, guaranty or security company, gas company, water company, ferry company, bridge company, street railway company, express company, electric light company, electric power company, telegraph company, press dispatch company, telephone company, turnpike company, palace-car company, dining-car company, sleeping-car company, chair-car company, and every other like company, corporation or association, also every other corporation, company or association having or exercising any special or exclusive privilege or franchise not allowed by

law to natural persons, or performing any public service, shall, in addition to the other taxes imposed on it by law, annually pay a tax on its franchise to the State, and a local tax thereon to the county, incorporated city, town and taxing district where its franchise may be exercised," etc.

By the next section it is provided: "In order to determine the value of the franchises mentioned in the next preceding section, the corporations, companies and associations mentioned in the next preceding section, except banks and trust companies, whose statements shall be filed as hereinafter required by section 4092 of this article, shall annually, between the fifteenth day of September and first day of October, make and deliver to the auditor of public accounts of this State a statement verified by its president, cashier, secretary, treasurer, manager, or other chief officer or agent, in such form as the auditor may prescribe, showing the following facts," etc.

By section 4078 it is provided that the Auditor, Secretary of State and Treasurer constituting the Board of Valuation, shall, "from the said statement of the corporation, and from such other evidence as it may have, fix the value of the capital stock of the corporation; and from the amount thus fixed shall deduct the assessed value of all tangible property assessed in the State, or in the county where situated; and the remainder thus found shall be the value of the corporate franchise subject to taxation by the Board."

From these provisions it is manifest that the so-called franchise tax is in reality a property tax upon all the intangible property of the corporations named in the act.

And so, in Henderson Bridge Co. v. Kentucky, 166 U. S., 154, [17 Sup. Ct., 534], the Supreme Court, in considering

this statute, said: "The tax in controversy was nothing more than a tax on intangible property of the company in Kentucky, and was sustained as such by the Court of Appeals."

And in Adams Express Co. v. Kentucky, 166 U. S., 180; [17 Sup. Ct., 530], the Supreme Court said: "We agree with the circuit court that it is evident that the word 'franchise' was not employed in a technical sense; and the legislative intention is plain that the entire property, tangible and intangible, of all foreign and domestic corporations, and all foreign and domestic companies, possessing no franchise, should be valued at its entirety, the value of the tangible property be deducted, and the value of the intangible property be thus ascertained and taxed for these purposes."

And so this court, in Henderson Bridge Co. v. Com., 99 Ky., 639, [31 S. W., 486], held that the term "intangible property" was used as synonymous with "franchises."

The sections we have referred to show conclusively that their object was to obtain a valuation of property for the purpose of taxation. The corporate property sought by this statute to be subjected to taxation may be said to be the added value which the exercise by the corporation of any special or exclusive privilege or franchise not allowed by law to natural persons gives to the tangible property. For example, a railroad track, without the right of operating a railroad, would be of small value; with that right, it might be worth millions of dollars.

So, in ascertaining what corporations come within the purview of this statute, and are by it required to make report to the Auditor, we should keep in mind the ultimate purpose of the statute, which is the taxation of this intangible property, and consider whether all corporations can, in

law, possess such intangible property; for surely we are not to stretch the language of the statute beyond its letter, and assume that the Legislature intended to require a vain thing, by imposing severe penalties for failure to report intangible property upon corporations which do not, and in law can not, possess it.

The appellant is an ordinary business corporation, created under the general law, under which no special or exclusive privilege not allowed by law to natural persons can be obtained. It conducts its business with the same rights and privileges, and subject to the same restrictions as natural persons engaged in the same business.

It is insisted, and appears to have been so decided by the trial court, that the insertion in the articles of incorporation of a proviso that the private property of stockholders should not be subject to the corporate debts, gave to the corporation an exclusive privilege, not enjoyed by natural persons, and therefore brought this corporation within the purview of the statute. This construction would bring every business corporation in the Commonwealth within the letter of the statute, and that is the contention made on behalf of appellee. But this privilege is a privilege, not of the corporation, but to the stockholder, and a privilege which every natural person may avail himself of by becoming a stockholder in a corporation.

The corporation itself is a distinct entity, making its own contracts, and responsible for its debts, to the uttermost farthing of its assets.

It is conceded that a trading corporation has a franchise; but its franchise is merely a franchise to exist, to have a name, to contract and be contracted with, to sue and be sued, in the same manner as a natural person, and this franchise is not a "special or exclusive privilege or fran-

chise not allowed by law to natural persons." Nor can the appellant corporation be said to have any intangible property subject to taxation under this statute. Its tangible property—its warehouse, drays and personal property—is of no greater value in the hands of the corporation than it would bear if owned and managed by the natural persons who are its stockholders. This is also true of its choses in action, etc. The value of its capital stock must necessarily be the value of its tangible property, choses in action, etc. It had no intangible property subject to taxation under the statute, and, as matter of law, could have none.

This brings us to consider the question whether private business corporations were intended by the Legislature to make the report provided for in the statute. The statute enumerates by name twenty different varieties of corporation and company, followed by the words, "and every other *like* company, corporation or association." It then provides, "also every other corporation, company or association having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any public service." It seems obvious that *some* varieties of corporations were intended to be excluded from the operation of this act; for why should this painstaking particularity of enumeration have been used, if the object was to include *all* incorporated companies, which would be the effect of the law if appellee's contention be sustained—that the exemption of private property from corporate debts is a privilege to the corporation? The latter clause, "also every other corporation, company or association having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any public service," seems to us to have been added for the purpose of includ-

ing such corporations as were not strictly *ejusdem generis* with the companies previously enumerated, but which might possess exclusive privileges, and, as a provision for the future, to impose the intangible property tax upon corporations to be hereafter created, which might have exclusive privileges or perform public services.

The only authority relied on in support of the contention that this language includes all corporations is the case of Western Union Telegraph Co. v. Norman, 77 Fed., 27. But that case was in relation to a company specifically named in the statute under consideration. The question here presented did not arise in that case, and was, presumably, not argued; and the suggestion made by the learned judge who delivered that opinion was made in argument, in reaching a conclusion to reach which the dictum cited was not necessary.

While we attach little importance to legislative debate or legislative action, in the amendment or alteration of bills while on their passage, as a means of ascertaining the proper construction of the act adopted, it is interesting to note that this bill, as originally introduced, provided for the taxation of "every corporation organized under the laws of this State, or any other State, for the purpose of profit or doing business, with the exception of certain enumerated foreign corporations.

It further appears, from an examination of sections 4227, 4228, 4231 and 4232, that section 4077 could not have been intended to apply to *all* corporations; for those sections provide for the taxation of foreign life insurance companies, foreign building and loan associations, foreign insurance companies other than life, and foreign assessment companies.

The conclusion reached is strengthened when we con-

sider the contemporaneous practical construction of the statute by the officers required by law to enforce it. Barbour v. City of Louisville, 83 Ky., 102; Harrison v. Com., 83 Ky., 162.

It has been suggested that to hold that this statute does not apply to all corporations would render the act unconstitutional, as in violation of section 171, which requires the taxes to be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax. But we can not concur in this contention. The revenue law of the State is not unconstitutional because it does not require natural persons, possessing no special franchise or privilege, to make report of special privileges and franchises for taxation; nor is it unconstitutional in failing to require a report for the purpose of a franchise or intangible property tax from those corporations, which have no special or exclusive franchise, and can not, as matter of law, possess intangible property. The law requires a report from all classes of corporations which can possess the intangible property sought to be taxed by this statute. The tax upon tangible property of all corporations is elsewhere provided for.

There remains but one question for consideration, and that is whether this company comes within the section, under the words "or performing any public service." It has been repeatedly held by this court, in passing upon exemptions from taxation, that the test to determine whether an institution performs a public service is whether there exists the right to levy a tax upon the public in aid of the institution. Barbour v. Board of Trade, 82 Ky., 653; Lancaster v. Clayton, 86 Ky., 373, [5 S. W., 864]; Clark v. Louisville Water Co., 90 Ky., 515, [14 S. W., 502]; Com. v. Makibben, 90 Ky., 384, [29 Am. St. Rep., 382; 14 S. W., 372].

Nor do we think, under the case of Nash v. Page, 80 Ky., 539, [44 Am. St. Rep., 490], following the case of Munn v. Illinois, 94 U. S., 113, that property becomes clothed with a public interest when used in a manner to make it of public consequence, and to affect the community at large. "When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, grants the public an interest in that use and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created. He may withdraw his grant by discontinuing the use, but so long as he maintains the use he must submit to the control."

This is very far from holding that a tobacco warehouseman performs a public service. It was there held that an analogy existed between the business of a warehouseman and that of a common carrier, in this: That as the owner of a stage can not, without excuse, decline to take a passenger, so a warehouseman is bound to allow all tobacco buyers to bid for tobacco on reasonable terms at his warehouse, and can not evade this responsibility by calling himself a commission merchant while continuing the business of warehouseman. And it is manifest that the business of warehouseman is as much affected by the public interest when conducted by a natural person as by a corporation, and it is not contended that the law was intended to apply to tobacco warehouses operated by natural persons. For the reasons indicated, a rehearing is granted, the former opinion is withdrawn, the judgment reversed, and cause remanded, with directions to award appellant a new trial, and for further proceedings consistent with this opinion.

The whole court sitting. Judges Guffy, Paynter and White dissenting. Judge Hobson concurring.

In this case the whole court is agreed that the indictment against appellant should be dismissed, but it has become necessary for the guidance of the executive officers of the State that the court should construe section 4077 of the Kentucky Statutes, relating to tax on franchises. The proper construction of this statute presents a question of great difficulty, on which the members of the court have been unable to agree; and it must be determined, in order that persons interested may know how to conduct their business.

The statute reads as follows: "Every railway company or corporation and every incorporated bank, trust company, guarantee or security company, gas company, water company, ferry company, bridge company, street railway company, express company, electric light company, electric power company, telegraph company, press dispatch company, telephone company, turnpike company, palace-car company, dining-car company, sleeping-car company, chair-car company, and every other like company, corporation or association, also every other corporation, company or association, having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any public service, shall, in addition to the other taxes imposed on it by law, annually pay a tax on its franchise to the State, and a local tax thereon to the county, incorporated city, town and taxing district where its franchise may be exercised."

It is insisted that this statute applies to all corporations. It is said that the right of corporate existence is a franchise,, and that the exemption of the stockholders from liability for corporate debts is also a franchise, and so that all corporations are included in the section. There would be more force in this argument if the statute

read, *any franchise*, but it reads, *"any special or exclusive privilege of franchise not allowed by law to natural persons;"* and this special or exclusive franchise may be taxed in any county, city, town or taxing district where it *may be exercised.* The same Legislature that passed this act passed a statute allowing everybody to form corporations for certain business purposes, and the right of corporate existence enjoyed by these corporations is in no sense a special or exclusive franchise not allowed by law to natural persons.

In Morawetz on Private Corporations (section 923) the accurate author says: "All persons have now the right of forming corporate associations upon complying with the simple formalities prescribed by the statute. The right of forming a corporation and of acting in a corporate capacity under the general incorporation laws can be called a franchise only in the sense that the right of forming a limited partnership, or of executing a conveyance of land by deed, is a franchise."

The same rule is laid down in Thompson on Corporations, section 5335. In section 5336 this author also says: "The franchise of being a corporation vests in the individuals who compose the corporation, while those secondary franchises, which we shall hereafter see, are vendible by the corporation, necessarily, and for that reason alone, must be deemed to vest in the corporation."

The right of corporate existence, not vesting in the corporation, does not pass under a sale by it of all its property and franchises. Smith v. Gower, 2 Duv., 19 Thompson on Corporations, section 5354; Coe v. Columbus Railroad Co., 75 Am. Dec., 518; Metz v. Buffalo Railroad Co., 17 Am. Rep., 201; Fietsam v. Hay (Ill. Sup.), [3 Am. St. R., 493; 13 N. E., 501].

That which does not pass under a grant of all the corporate property and franchises is certainly not a franchise of the corporation for taxing purposes, under our Constitution, providing for the taxation of all property of the citizen.

It is equally clear that the exemption of the individual property of the stockholders from corporate debts is not a franchise of the corporation, but vests in the stockholders. It is not a special or exclusive privilege not allowed by law to natural persons, for all persons may be stockholders in corporations. The privilege is open to all who may wish to take advantage of the statute. The concluding words of the sentence providing for the payment of a local tax on the franchise to the county, city, town and taxing district where it may be exercised, can not refer to the exemption of the individual property of the stockholder from corporate debts; for these words plainly refer to rights exercised by the corporation, such as the collection of tolls, the taking of private property under the right of eminent domain, and the like. If they refer to the exemption of the stockholder's individual property from corporate debts, then it would follow that a local tax under this statute could be imposed in every county or locality where it was exercised; that is, where any stockholder enjoyed the exemption, which might be in any part of the State.

The object of the statute is to get at the property of the corporation for the purposes of taxation. It refers, by the terms "privilege or franchise," to rights possessed by the corporation which are valuable as property, and so should be assessed for taxation. The right of the stockholder to exemption from liability for the debts of the corporation above the amount specified by law is

not the property of the corporation, and so should not be construed within a statute providing simply for the taxation of its property. The right to do business as a corporation is no more the property of the corporation than the right to do business as a partnership is the property of the firm. Limited partnerships are common, where the partners are not to be liable for the firm debts, and no one would contend that such a partnership falls within this statute.

The same result will be reached if we examine the other words of the section. It will be observed that it applies, not only to corporations, but to other companies or associations. Corporations and unincorporated associations are placed by the statute on the same plane. It applies to all, whether incorporated or not, "having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons or performing any public service." This is made very clear by section 4082 in the same subdivision, which is as follows: "Whenever any person or association of persons not being a corporation, nor having capital stock, shall, in this State, engage in the business of any of the corporations mentioned in the first section of this article, then the capital and property, or the certificates or other evidences of the rights or interests of the holders thereof in the business or capital and property employed therein, shall be deemed and treated as the capital stock of such person or association of persons for the purpose of taxation and all other purposes under this article, in like manner as if such person or assoc'ation of persons were a corporation."

Section 4086 also provides: "All corporations and other persons who are required to make reports to the Auditor of Public Accounts shall pay all the taxes due the State

[12]

from them into the treasury at the same time, and shall be liable for and pay the same rate of interest and penalties as defaulting individuals, except where otherwise specially provided."

The three sections must be read together, as they form part of one plan. From the three, taken as a whole, it is evident that the purpose was to reach persons or corporations having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any public service. With this view, all persons engaged in the business of any of the corporations referred to are placed on exactly the same plane as the corporations, and such persons, as well as the corporations, are required to pay their taxes directly to the Auditor. If the first section includes all corporations, then it would follow that all individuals engaged in the same business as the corporations must be assessed in the same way. No one has ever so construed the statute. It would not be contended that any individual or association must pay taxes directly to the Auditor, unless exercising a special or exclusive privilege or franchise not allowed by law to other natural persons, or performing some public service. But if the statute does not apply to an individual, it does not apply to a corporation in the same business, for both understand it just alike. No corporation is included within the statute, unless an individual or an unincorporated company situated just as it is would be covered by it.

Section 4085 provides: "The property of all corporations, except where herein differently provided, shall be assessed in the name of the corporation in the same manner as that of a natural person."

These sections are a part of the general revenue and

taxation bill, providing for the payment of a uniform tax on "all property directed to be assessed for taxation" by the owner, person or corporation assessed. Ky. St., section 4019. Personal property of every kind is required to be separately valued, and, if there be no appropriate column in the tax book, it shall be valued in the column headed *"Miscellany."* Id., section 4050. When the assessor has taken the tax list of corporations like appellant, including their tangible and intangible property, all that they have has been given in for taxation, just as in the case of a firm or any other unincorporated association.

Section 4077 was not intended to apply to any of these, but only to such corporations or companies as exercised special and exclusive franchises, or performed some public service. The value of these intangible franchises could not well be fixed by an assessor, and, when these companies have paid a tax on these franchises, they have only been taxed on all their property as provided by the Constitution. The same result is reached when appellant gives in all its property to the assessor, and so all are put on the same footing.

The statute referred to received a legislative construction by the act approved March 19, 1898, entitled, "An act concerning the assessment and valuation for taxation of corporate franchises and intangible property by cities of the first and second class." This act follows nearly literally all the sections of the act before us, but provides (Acts 1898, p. 96): "No assessment for city taxes shall be made by any assessor or board of valuation and assessment of the franchise of any private business, mercantile or manufacturing corporation whose property is not devoted to a public use."

It can not be presumed that the legislature intended

one rule to apply in cities of the first and second classes, and a different one in the State at large and all of its other subdivisions. It had no power, under the Constitution, to exempt from taxation property in cities of the first and second classes that is subject to taxation in other parts of the State. If the act could be so construed, it is unconstitutional.

It is a well-settled rule that that construction must be adopted which will uphold both acts, rather than the one which will destroy one of them. Under this rule, the second act must be regarded as a legislative construction of the first, and that act must be construed as not applying to the classes of corporations exempted from the operation of the other act.

The statute was given this practical construction by the executive officers of the State during two administrations. The Legislature was well aware of the construction, so put upon it. and, having not only acquiesced in it, but expressly adopted it, it should not now be departed from.

Appellant is a private business corporation, organized under chapter 56 of the General Statutes, possessing no franchises or privileges not possessed, in effect, by an individual or limited partnerships engaged in the same business. Such corporations are now running stores, farms, mills and many other enterprises in this State. They are not within the letter or spirit of the statute, and no good can come from requiring them to make the reports in question.

For these reasons, I concur in the opinion of the court delivered by Judge DuRelle. This separate opinion is filed in addition only to state more in detail some of the reasons sustaining the conclusion reached.