Case 10.—ACTION BY THE COMMONWEALTH AGAINST THE LOUISVILLE TANK LINE CO. TO RECOVER A FRANCHISE TAX, MAY 24.

## Louisville Tank Line Co. v. Commonwealth.

123   81
f 132   356
132   368

Appeal from Franklin Circuit Court.

ROBERT L. STOUT, Circuit Judge.

Judgment for plaintiff. Defendant appeals. Affirmed.

1.  Franchise Tax—Tank Car Corporations—Liability—Under Kentucy Statutes, section 4077, requiring certain enumerated companies, including palace car companies, chair car companies and every other like car company, corporation or association; also every corporation, company or association having or exercising any exclusive or special privilege or franchise not allowed by law to natural persons, or for performing any public service, to pay a franchise tax, a corporation which owns and leases tank cars, designed especially for transporting oil by railroads, is a like corporation to many of those specifically named in section 4077, and is liable for assessment for a franchise tax.

2. Proceeding to Enforce Tax—Pleadings—Notice—Presumption—In the proceeding by the Commonwealth, under section 4083, Kentucky Statutes, to enforce a franchise tax agaist a tank car corporation, where it is alleged in the petition, and not denied, that the defendant had notice of the report of the assessment of its franchise by the State Board of Valuation and Assessment, and was informed that it had thirty days in which to offer objection to the valuation so fixed, it is not necessary to introduce proof of such notice on the trial, as the fact that the assessing officer took such incidental steps to, perfect the assessment is presumed, until the contrary is shown.

WHITE & RAY, Attorneys for appellant.　BODLEY, BASKIN & FLEXNER, of counsel.

### CLASSIFICATIONS OF QUESTIONS DISCUSSED WITH AUTHORITIES.

1. A private corporation, whose entire assets consisted of tank cars and who had leased these cars to another private corporation (which latter corporation used the cars in sending its private products over various railroads) is not one of the class named in section 4077, Kentucky Statutes. It enjoys no special or exclusive privileges or franchise not allowed by law to natural persons and performs no public service, and is not a "like company" to those enumerated in that section. Consequently it is not liable for franchise tax. (Louisville Tobacco Warehouse Co. v. Commonwealth, 106 Ky., 168; Providence Banking Co. v. Webster County, 108 Ky., 528; Aetna Life Ins. Co. v. Coulter, 115 Ky., 796.)

2. A corporation owning tank cars, which has leased its cars to another corporation and is itself engaged in no business, is not liable for franchise tax.

3. Where the State Board of Equalization described by section 4077 fails to give the 80 days' notice required by section 4083, the assessment is void.

4. Such an assessment would amount, if sustained, to taking property without due process of law. (Santa Clara County v S. P. R. R. Co., 18 Fed. 385; Hager v. Reclamation District, 101 U. S., 701.)

N. B. HAYS, Attorney General and C. H. MORRIS, for appellee. C. J. WHITTEMORE, HAZELRIGG & HAZELRIGG, of counsel.

The appellant, though a corporation, is not one of the twenty named in section 4077 Ky. Sts., but if the findings of the court are to have effect, it is conclusively settled that appellant was,

during 1903, a corporation—a company—organized under the laws of this Commonwealth, &c., engaged within this State in the business of acquiring, owning and renting out tank cars for profit, which cars are used by the lessee on railroads, in and out of this State, for hauling the oil of the lessee to whom it leased said cars 98 in number) in the transportation of its oil.

This finding of fact brings appellant within the definition and intent of section 4077.

To hold differently would work such inequality as is repugnant to the constitution, Kentucky Statutes Secs. 4077, 4079, 4083 and 4171, 17 R. 387 (166 U. S. 150); 105 Ky. 472 (20 R. 1193); 106 Ky. 165 (22 R. 1747).

OPINION BY JUDGE O'REAR—Affirming.

The appellant is a domestic corporation which owns a number of tank cars designed especially for transporting oil by railroads. Its business is to lease its cars to shippers, who in turn hire the railroads to haul them from point to point as may be desired. Appellant leases all its cars to the Globe Refinery Company, which uses them exclusively in its own business, for transporting its own oils and other products from place to place. Appellant does not do any other business than owning and leasing these cars. The Commonwealth of Kentucky has taken steps to levy and collect a franchise tax from appellant under authority of section 4077, Ky. St. 1903, which reads: "Every railroad company or corporation, and every incorporated bank, trust company, guaranty or security company, gas company, water company, ferry company, bridge company, street railway company, express company, electric light company, electric power company, telegraph company, press dispatch company, telephone company, turnpike company, palace car company, dining car company, sleeping car company, chair car company, and every other like car company corporation or association; also every other corporation, company or association having or exercising an exclusive or special privilege or franchise not allowed by law to natural persons, or for per-

forming any public service, shall in addition to the other taxes imposed on it by law, anually pay a tax on its franchise." etc. A tank car company is not specifically named in the foregoing section. The question for decision is, whether it is embraced within the term "and every other like company." Appellant's contention is that the expression is meant to apply only to such companies as enjoy a special privilege not allowed by law to natural persons. Louisville Tobacco Warehouse Company. v. Commonwealth 106 Ky. 165, 20 Ky. L. R. 1747, 49 S. W. 1069, 57 L. R. A. 33, and Aetna Insurance Company v. Coulter, Auditor, 115 Ky. 796, 25 Ky. L. R. 193, 74 S. W. 1050 are particularly relied on by appellant in support of its position.

The Legislature intended of course to lay the franchise tax upon all the corporations whose business is expressly named in the section. It intended also to lay the tax on others not specifically named, but which are otherwise described. They are, first, those corporations or associations engaged in "like" or similar business to any enumerated just before in the statute; also, second, every other concern exercising an exclusive or special privilege or franchise; also, third, any private corporation performing a public service. Each classification is very comprehensive in the term used. Each was meant to include something in addition to those already indicated. It was not intended to confine the section either to "public service" corporations, or those exercising an exclusive privilege. For example, electric light companies, electric power companies, and press dispatch companies do not in any sense exercise any special privilege or franchise; nor are they performing a public service as that term is used. Anybody could engage in the business done by either of them, and would not be bound to serve only those whom it chose to, except by the act of 1898 (now section 883a, Ky. St. 1903), press dispatch companies are required to sell their news to all papers in

this State on the same terms; nor could they condemn private property, or have a tax levied for their benefit. Still, being expressly named, they are liable to the tax. On the other hand, others of the companies named are engaged in public service, such as street railway, railroad, telegraph and telephone companies. Others named, while they do serve the public in a sense, are not engaged in "the public service" that the statute refers to. They are such as guaranty and security companies, and trust companies. But it was clearly intended to bring under the tax all persons or corporations engaged in any particular business named, and all others not named but engaged in like business, or so similar as to reasonably and justly fall within any of the classes described.

Which brings us to a particular consideration of the nature of appellant's business. It says it is not a common carrier, yet its business is exclusively that of hiring its vehicles to carry commerce on railroads. So far as that is concerned, it is not one whit different in nature from chair car, dining car, or sleeping car companies. We know that there are corporations who furnish cars of peculiar design to shippers, such as refrigerator cars for butcher products and the shipping of fruit, or "palace" cars for horses and cattle, poultry cars, and so forth. All these are engaged in "like business to the sleeping car and chair car companies." The fact that the owner of the cars hires out its whole outfit to one customer does not change the character of its business. Refrigerator car companies, the horse palace car companies, and dining car companies, who do not operate railroads, in the absence of legislation might not be compelled to serve the public. At any rate, they would be under no penalty to the public for failing to do so. Having the right to hire out all their cars to such members of the public as they may choose to serve, it follows that they could let them all to one customer. Still

the business would be auxiliary to that of common carriers by supplementing their agencies with those of a special make and adapted to a particular and limited use, by which commerce is handled by railroad companies over their tracks. It partakes of every essential feature of some of the companies specifically designated in the statute.

The question recently arose before the circuit court of the United States for the Northern District of Illinois, held by Landis, District Judge, in Interstate Commerce Commission v. Frank Reichmann, 144 Fed. —; whether owners of private cars, who were not common carriers, were amenable to the Federal statutes denouncing rebating. It was held that as they were instrumentalities of commerce, employed as such by the railroads, they were embraced within the jurisdiction of the United States government to regulate commerce among the States. To have held otherwise, the court reasoned, would have been to nullify the express purpose of Congress in the enactment of the law, by allowing the agencies employed by the principal to do with immunity what the principal was prohibited from doing under severe penalties. If, in our case, those who furnish vehicles to railroads to help them carry on their business of common carriers are not liable for a franchise tax, then a very considerable part of the railroad traffic of the State would be carried on in most cases by concerns, which, if nonresident, might pay no taxes at all, yet enjoy every privilege and protection under our laws that the common carriers do. If one company could have the carrying contract for the Standard Oil Company, or of the amalgamated soft coal interests operating in some of the States, they might well forego seeking any other; indeed, might be bound not to take other contracts. That fact ought not to put them on a more favorable footing than if they served all the public as far as they had the means. Viewed from

whatever standpoint it may be, appellant is a like corporation to many of those specifically named in section 4077, and is liable for the franchise tax, sought to be imposed upon it. Louisville Tobacco Warehouse Company v. Commonwealth 106 Ky. 165, 20 Ky. L. R. 1747, 49 S. W. 1069, 57 L.R.A. 33, was where a corporation was engaged alone in selling tobacco on commission. It partook of none of the peculiar qualities of any of the corporations covered by section 4077. Nor does Aetna Life Ins. Co. v. Coulter, Auditor, 115 Ky. 25 Ky. L. R. 193, 74 S. W. 1050, present a corporation which was engaged in any business or occupation, exact or kindred, covered by that section.

Another error assigned is that the court should not have rendered a judgment against appellant even though it were liable to assessment, because there was not proof that appellant had the notice provided for by section 4083, Ky. St. 1903, which provides that after the board of valuation and assessment fixes the value of corporations reporting to it, the corporation is to be notified of the fact whereupon it shall have thirty days from the time of receiving notice to go before such board and ask a change of the valuations. It was alleged in the petition that the notice was given, and that appellant did appear before the board, who considered its protest. These allegations are denied by the answer, and there is no evidence in the record on that subject. A former secretary of appellant testifies that it had not the notice of the assessment, or of the fact that the tax was due. The petition alleges the assessment in this language: "The defendant company made a report to the State board of valuation and assessment in order to enable said board to fix the valuation of franchise and intangible property of defendant under sections 4081 and 4078 of said statutes, that upon that report and other evidence, the State board of valuation and assessment duly valued and assessed defendant company on its

franchise for the fiscal year of 1903 at the sum or
value of $65,000, of which action by the board the de-
fendant had notice and was informed that it had 30
days in which to offer objection and show why the val-
uation so fixed was not fair and just, before the ac-
tion of the board became final." The only parts of
these allegations put in issue by the answer are: (1)
That the report was made by appellant to the board
in order to enable it to fix the valuation of appellant's
franchise and intangible property; and (2) that ap-
pellant had notice and was informed that it had 30
days in which to offer objections to the valuation so
fixed. It is not denied, therefore, that the report pro-
vided by section 4078 was in fact made, nor is it de-
nied that upon that report, for whatever purpose it
may have been filed, and upon other evidence, the
board actually valued and assessed appellant's fran-
chise for taxation. A copy of the report filed by ap-
pellant under section 4078 is filed in the record as evi-
dence. It contains all of the facts and information
required to be furnished by section 4078. Section
4090, Ky. St. 1903, provides that when any corpora-
tion should fail to make the report as required by the
foregoing sections, the board may proceed to ascer-
tain the facts and values as required by that article
of the statute, in such manner and by such means as
it deems proper, and shall fix the value of the
corporate franchise liable to taxation as aforesaid,
and that the corporation shall be taxed accordingly.
Thus it is admitted by the pleadings and shown by the
exhibit filed that the report required by the statute
was filed, that the board acted upon it, and did ac-
tually fix and assess the value of appellant's fran-
chise. The assessment was valid when so done.
That the assessing officers of the State took such
other incidental steps as were necessary to perfect
the assessment, is a fact that is presumed. Acting
as they did under their oaths of office, every official

act when completed raises a presumption in law that every incidental step necessary to its perfection has been taken by them. In a proceeding to recover the tax from a person or corporation assessed, if the issue is presented whether any such step was taken, in view of this presumption of law in favor of the completeness and correctness of official action, the burden is shifted to the taxpayer to prove that it was not taken. Of course, this presumption makes only a prima facie case for the State. It may be rebutted and may be sustained by further evidence if it is rebutted, and until it is rebutted the presumption of the law is sufficient to sustain the allegation of the petition of the State that such steps were taken. 1 Cooley's Taxation, 447.

The testimony of Hewitt, the witness for appellant, to the effect that he had not received the notice provided for in the statute, is not sufficient to prove that the corporation did not receive the notice. He was not the chief officer of the corporation, and was not the person upon whom the notice should have been served, or who presumably would have received it in the due course of mail. That he did not receive it, it is of course competent to prove, but that the president, or other managing officer of the corporation, did not receive it, he cannot in the nature of things know, except as such officer may have told him of it. It is manifestly incompetent for him to testify concerning a fact thus brought to his knowledge. In this view of the state of the record, it was proper for the court to enter a judgment against appellant for the amount of the franchise tax levied, including the penalty for its nonpayment.

Judgment affirmed.