CASE 41—SUIT BY THE KENTUCKY REFINING COMPANY AGAINST F. P. JAMES, AUDITOR OF PUBLIC ACCOUNTS, TO RESTRAIN THE COLLECTION OF A FRANCHISE TAX AGAINST CMPLAINANT FOR THE USE OF TANK CARS FOR THE TRANSPORTATION OF ITS PRODUCT.—November 17, 1908.

## James, Auditor, v. Kentucky Refining Co.

Appeal from Franklin Circuit Court.

R. L. Stout, Circuit Judge.

Decree for complainant, defendant appeals—Reversed.

1. Taxation — Corporate Franchise—Statutes—Construction.—Ky. St. 1903, section 4077, imposes a franchise tax on every rail-

road company, press dispatch, telephone, turnpike, palace-car, sleeping-car, and "every other like company" having or exercising any exclusive privilege not allowed to natural persons or for performing any public service. Held, to impose a franchise tax on a corporation manufacturing cotton seed oil and owning tank cars by which such products were transported by railroads on a mileage basis.

2. Taxation—Franchise Tax—Character of Business.—Where a corporation is engaged in the business of freight carrying, it is subject to a franchise tax imposed by Ky. St. 1903, section 4077, though such business is incidental only to its main activities.

3. Taxation—Franchise Tax—"Franchise."—The term "franchise," as used in Ky. St. 1903, section 4077, imposing a franchise tax on corporations engaged in freight traffic, etc., is not the right to do the thing, but the doing of it in fact, so it was no answer to a corporation's liability for such tax that its engaging in such business was ultra vires.

4. Taxation—Franchise—Trasportation Business—Nature of Tax.—The franchise tax imposed by Ky. St. 1903, section 4077, on persons engaged in the transportation business, is not an occupation tax, nor a tax on a mere privilege of engaging in business, but a tax on the business, since the business is not taxed unless property otherwise taxable is employed in the designated occupation; nor is the business taxed independently of, or without reference to, the tangible property to which it is by statute annexed.

5. Taxation—Different Assessments—Corporations.—Where part of a corporation's capital was engaged in the carrying business, it was liable to taxation on the capital not so employed, as provided by the revenue act of 1906 (Laws 1906, p. 88, c. 22), and also for the franchise tax imposed on persons engaged in such business, by Ky. St. 1903, section 4077; the proper method being to assess separately the tangible property engaged in the carrying business, and then to impose a franchise tax.

JAS. BREATHITT, Atty. Gen'l, for appellant.
T. L. EDELEN and ARTHUR M. RUTLEDGE, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR—Reversing.

Appellee is a domestic corporation, whose principal

business is the manufacture of oil from cotton seed, the refining and sale of such oil, and dealing in the by-products of the manufacture. It owns and operates 200 or more tank cars for transporting its oil to market and to its customers. The cars are the familiar oil tank railroad cars in general use for transporting oil in large quantities. Appellee used all its cars in its own business. The method is to hire the cars to the transporting railroads at so much per mile; appellee paying the carrier roads their customary rates for hauling its oils. The net result is appellee furnishes cars to the railroad companies which it patronizes in which to carry its oils, thereby engaging to that extent in the business of a carrier. The State Board of Valuations and Assessments required appellee to report its business done as such carrier, as is required of common carriers generally, and thereupon assessed a franchise tax against it based upon the valuation placed by the board upon the franchise it was enjoying in respect to such business of furnishing these special freight cars for the transmission of freight traffic.

The statute under which the State Board of Valuations and Assessments proceeded is section 4077, Ky. St. 1903, which reads as follows: "Every railway company or corporation, and every incorporated bank, trust company, guarantee or security company, gas company, water company, ferry company, bridge company, street railway company, express company, electric light company, electric power company, telegraph company, press dispatch company, telephone company, turnpike company, palace-car company, dining-car company, sleeping-car company, chair-car company, and every other like company, corporation or association, also every other corporation, company or asso-

ciation having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any public service, shall, in addition to the other taxes imposed on it by law, annually pay a tax on its franchise to the state, and a local tax thereon to the county, incorporated city, town and taxing district, where its franchise may be exercised. The auditor, treasurer, and Secretary of State are hereby constituted a board of valuation and assessment, for fixing the value of said franchise, except as to turnpike companies, which are provided for in section 4095 of this article, the place or places where such local taxes are to be paid by other corporations on their franchise, and how apportioned, where more than one jurisdiction is entitled to a share of such tax, shall be determined by the board of valuation and assessment, and for the discharge of such other duties as may be imposed on them by this act. The auditor shall be chairman of said board, and shall convene the same from time to time, as the business of the board may require. (Assessment of franchises in first and second class cities, sec. 2984a.)"

This suit was brought and successfully maintained in the circuit court for an injunction against the state board staying it from proceeding to collect the franchise tax so assessed. It is conceded by the state that, if appellee is liable for the franchise tax, it is because it is a like company to some of these enumerated in section 4077, Ky. St. 1903, supra. A very similar question came before this court in the comparatively recent case of Louisville Tank Line v. Commonwealth, 123 Ky. 81, 93 S. W. 635, 29 Ky. Law Rep. 257. In that case the appellant owned a number of cars identical with those owned by appellee. It rented them all to one customer—an oil refining com-

pany—who used them in its business precisely as appellee does. The question was whether that appellant was liable to pay the franchise tax laid by section 4077, Ky. St. 1903. We held that it was; that it was a like company to palace-car and dining-car companies. It is claimed by appellee in the argument in this case that the Louisville Tank Line Case is not in point, and may be differentiated from this one because in the former the business of the company was to own and lease such cars for the accommodation of freight traffic, while here the owning and using such cars by appellee was a mere incident to its business; but we fail to see that it makes any difference whether the business of engaging, though partially, in the traffic of freight carrying, is the main or incidental business of the person exercising such franchise, for a person who is a taxpayer may be engaged in any number of occupations, any or all of which may be connected, yet some of them be of a character that a license tax to conduct them might be lawfully exacted by the state.

Appellee also contends that its charter does not authorize or permit it to engage in the business of a carrier, or in any business save that mentioned in its articles of incorporation; that therefore it does not exercise the franchise sought to be taxed. The franchise spoken of by this statute is not the right to do the thing, but the doing of it. The state does not seek by this section to tax the right to do it. It fixes a value upon the privilege which has been enjoyed, and taxes that value as property of the person who has exercised the privilege. The right to be a corporation is one thing; the fact that the corporation actually engages in a certain business, or enjoys a privilege peculiar to such business, is or may be quite a different thing. The legislative purpose was to classify certain

kinds of employment, which upon an examination of
the statute will be seen to have been all of a kindred
nature—it was the serving of the public in some sense.
It does not appear to us to be material whether the
person exercising the privilege engaged in it as a sole
occupation or not. Indeed, several of those named in
the statute may be lawfully exercised by a single cor-
poration, a firm or a single individual, such, for ex-
ample, as electric light companies and water com-
panies. Yet if such was the case. and in addition the
same concern manufactured and sold ice, or even if
the latter were its principal business, it would not .be
excused from paying not only one but two franchise
taxes; one upon its business as an electric light com-
pany, and another upon its business as a water com-
pany. At the same time, it would be taxable as a
corporation, firm, or natural person, as the case might
be, upon its property employed in the manufacture of
ice. Such, indeed, has been done under statutes not
dissimilar to the ones now in existence as to a corpo-
ration which did both an insurance and a guaranty
company business. Fidelity & Casualty Company v.
Coulter, 115 Ky. 805, 74 S. W. 1053, 25 Ky. Law Rep.
200. While by statute in this state railroad com-
panies may not engage in any other business, nor
may banks, yet, where the statutes are silent upon the
subject, we apprehend a corporation may be em-
powered by its charter to engage in several different
kinds of business. Then, if it did, such as has been
supposed above, and including electric power and gas,
could it be maintained that such concern should pay
but a single franchise tax; whereas, under the statute,
it might be subject to four if each business were
treated separately? Or that it should pay none, if
perchance it also did a business not enumerated as

liable to a franchise tax, and made that business its principal business?

Such favoritism, such incentive to the concentration of so-called public enterprises in one hand, could not have been the legislative purpose. Equality before the law is the great aim of an enlightened and free Commonwealth. Particularly is this so with respect to the tax gathering function of government. To that end classification of subjects of taxation is attempted. Some classifications deal with persons, others with property, and still others occupations. If a single taxpayer should fall within several instead of a single classification, it would argue nothing against the validity of the tax, nor necessarily bring it into repugnance with the Constitution upon the ground that it was double taxation. An examination of section 4077, Ky. St. 1903, shows a classification of certain kinds of business, engaging in any of which is deemed the exercise of such a privilege as that it is reckoned as property, because it gives to the more familiar forms of property employed in the business a peculiar earning value which it would not otherwise have. It is not the mere privilege of doing the thing, but it is the value of the property so employed enhanced by the manner of its employment, which the Legislature has named a franchise for taxing purposes, and taxes it as a separate value of the property. Commonwealth v. Ledman, 106 S. W. 247, 32 Ky. Law Rep. 452. It will be observed it is never taxed unless property otherwise taxable is employed in the designated occupations; nor is it ever taxed independently of, or without reference to, the tangible property to which it is by this statute annexed. It is therefore not an occupation tax, as that term is used in law generally, and for the same reason is not

a tax upon the mere privilege of engaging in the business. Among the subjects so classified by this statute is that of carriers of freight and passengers by means of railroads, and their various equipages. If the carrier is a railroad company, its designation is clear, and its liability under the statute not disputed; but railroad companies are known to be not the only common carriers of freight and passengers by the use of railway facilities. Express companies, not owning either tracks, locomotives, or cars, are yet such carriers. Hence they are included. Palace-car companies, owning cars, but neither tracks nor locomotives, are consequently included. Dining-car companies, which may be mere renters of cars, or for that matter caterers upon cars owned and operated by any of the other carrier companies, are so included. It has been held under this statute that a railroad company operating over tracks not owned nor used exclusively by it was subject to the tax, and by like reasoning if it also leased its cars, instead of owning them, it would seem to be liable. It has also been held that a railroad company owning a track but no equipage was liable where its track was leased to and used by another company by perpetual lease. Illinois Central R. R. Co. v. Commonwealth, 108 S. W. 245, 32 Ky. Law Rep. 1112. And as we have seen in the Louisville Tank Line Case, supra, a concern which owned cars but did not operate them, leasing them all to one customer, was liable to the tax. The idea seems to us to be a simple one. The business of carrying freight or passengers upon railroads was deemed to impart a peculiar and special value to all the physical property so employed. Therefore the special value so added was to be assessed and taxed. By whomsoever owned, whether operated by the owner

or not, if it engaged in the carrying business, it falls within the statutory classification. If it does much or little, yet does bear some of the burden and enjoy some of the profits of railway commerce, it is so classified, and must be taxed upon the franchise thereby imparted to it and enjoyed by its owner. For these reasons, in addition to those advanced in Louisville Tank Line v. Commonwealth, supra, we hold that appellee is a like company to those carrier companies named in the statute.

Appellee complains that it reported under the Morris Bill (Revenue Act 1906, Laws 1906, p. 88, c. 22) and was assessed and paid a license tax for the year in suit (1907) upon its capital. It or the taxing officers, one or all, may have erred, but that will not prevent a correct application of the law when invoked by the taxing power. Doubtless, credit may be had on the tax now sought to be enforced for any excess, if there was any, so paid on the other assessment, for appellee was undeniably liable on its capital for the tax due under the act of 1906, so far as the capital was not employed in this carrying business. To the extent it was employed, it seems the correct method is to assess separately the tangible property so employed, and then in addition the franchise tax discussed.

We will notice, in closing, a final argument made by appellee; that is, that it was carrying its own goods, in its own cars, to its own customers, and was not in any sense a common carrier, and that many concerns, such for example as coal mines, quarries, and the like, have tramroads upon which they operate their own cars and motive power in transporting their own property to connecting railroads. Such illustrations may be carried to even greater extreme, and might

include the use by a man of his own well bucket. None of these illustrations seem to us to embarrass the question. The legislative classification dealt with the carrying business. That is commonly understood, and the Legislature consequently must have meant to deal with such traffic after it had become a part of the general volume. It was dealing with the tracks and vehicles engaged in that business. It knew they had an exceptional value because they were so engaged, and that value, wherever found, was intended to be taxed separately as part of the owner's property.

We think the learned trial court erred in his construction of the statute.

The judgment is reversed, and cause remanded, with directions to dismiss the petition.

Hobson, J. (dissenting).

Appellee manufactures oil from cotton seed. When oil is manufactured, it must be placed in some vessel for delivery to the customer. To deliver its oil to its customers, appellee uses large tanks, and, as these tanks are too large to be shifted from car to car, it owns cars on which its tanks are carried; the railroad company using its cars and charging it for hauling them. It is not in the carrying business, it only delivers the oil it makes to its customers, and it has adopted this method of delivery by means of tanks on cars because more convenient. By the revenue act of 1906, the manner of assessing certain corporations is provided by section 1, art. 4 (Laws 1906, p. 126, c. 22). The manner of assessing all other corporations is regulated by article 11. It is insisted that appellee is one of the corporations to be assessed under section 1, art. 4. That section names 20 kinds

of corporations. It includes, also, "every other like company, corporation or association," and "every other corporation, company or association having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons or performing any public service." It is conceded that appellee is not one of the 20 corporations named. It is also conceded that appellee neither has nor exercises any special or exclusive privilege or franchise not allowed by law to natural persons, and that it performs no public service; but it is insisted that it is a like company, corporation, or association to those named, and this is the only question in the case. Section 1, art. 4, is verbatim the same as section 4077, Ky. St. 1903. The opinions of this court construing that section are therefore applicable. In Aetna Life Insurance Company v. Coulter, 15 Ky. 801, 74 S. W. 1050-2, 25 Ky. Law Rep. 193, this court in determining what was a like company or corporation, said: "In determining the meaning of the word "like" in this section, we must follow the rule noscitur a sociis. All the 20 named corporations have special or exclusive privileges or franchises not allowed by law to natural persons. The word 'like' must be read not only in connection with the preceding words, but with the following clause. The likeness which the Legislature had in mind is in having or exercising some special or exclusive privilege or franchise not allowed by law to natural persons, or performing some public service. In Levi v. Louisville, 97 Ky. 405, 30 S. W. 976, 28 L. R. A. 480, 16 Ky. Law Rep. 872, this court said that the board of valuation was created "to value every and all corporations, associations or companies having or exercising any special privilege or franchise not allowed by law to natural persons.' And

in Board of Councilmen of City of Frankfort v. Stone, 108 Ky. 400, 56 S. W. 679, the court said: "The franchise primarily in view under section 4077, Ky. St. 1903, is any special or exclusive privilege not allowed by law to natural persons.' In the interpretation of all statutes levying taxes, a cardinal rule is that their provisions are never extended by implication beyond the fair meaning of the terms used, and in every case of doubt they are construed more strongly against the government, and in favor of the taxpayers, because burdens are not to be imposed unless the intention of the Legislature to impose them is distinctly shown." In the case of Fidelity & Casualty Company v. Coulter, supra, the court, having the same question before it again said: "A company which is in name an insurance company, but is doing a guarantee or security business in this state, is a like corporation. within the meaning of section 4077, Ky. St. 1903, and is therefore embraced by it."

It is manifest that, if what the court said in these cases is still recognized as the law of the state, appellee cannot be held assessable under article 4, for, if the likeness which the Legislature had in mind is in "having or exercising some special or exclusive privilege or franchise not allowed by law to natural persons or performing some public service," it must be admitted that appellee is not a like corporation, as manifestly it exercises no special or exclusive privilege and performs no public service. The rule referred to in these opinions that taxes are never levied by implication, and that tax laws are construed more strongly against the government, is universally held, and to hold appellee a like corporation to those named in the statute is entirely to ignore this principle of construction as well as the rule of noscitur a

sociis.  By section 6 of article 4, every natural per-
son engaged in the business of any of the corporations
named in the first section of the article is required to
be assessed and taxed as the corporations therein
·named.   In Louisville Tobacco Warehouse Company
v. Commonwealth, 106 Ky. 165, 49 S. W. 1069, 57 L.
R. A. 33, it was pointed out that the purpose of the
Legislature in this provision was to reach persons or
associations having .or exercising some special or ex-
clusive privilege or franchise not allowed by law to
natural persons or performing some public- service.
In other words, what the Legislature had in mind was
the taxation in a certain way of public service corpo-
rations, and it provided that any association or per-
son engaged in the business of any of these corpora-
tions should be taxed in the same way.   In the case
of the Tobacco Warehouse Company and in Marion
National Bank v. Burton, 90 S. W. 948, 28 Ky.
Law Rep. 870, 10 L. R. A. (N. S.) 947, the court
said: "From these provisions it is manifest that
the so-called franchise tax is in reality a property
tax upon all the intangible property of the corpora-
tions named in this act."   In Standard Oil Company
v. Commonwealth, 119 Ky. 79, 82 S. W. 1021, 26 Ky.
Law Rep. 985, the court said: "Franchise taxes are
collected, but they are imposed only on the tangible
property of those corporations classed as public serv-
ice corporations, or such as enjoy special or exclusive
privileges not allowed by law to natural persons.
Section 4077, Ky. St. 1903.   Mere trading corpora-
tions are not included."

Appellee is a mere trading corporation.   It is not
in any sense a public service corporation.   The Leg-
islature named in section 4077 palace-car companies,
sleeping-car companies, dining-car companies, and

chair-car companies, and then it added the words,
"and every other like company." What it had in
mind was that there might be other car companies
like those named performing public service. It did
not have in mind taxing transportation in a peculiar
way, simply because the goods were transported in
a car, rather than a wagon. If the aeroplane should
be made a success, and a company should be organized
to carry goods through the air, it would be a like com-
pany to those named; but the farmer who brings his
hay to market in his wagon is not engaged in the
business of any of the corporations named in the first
section of the article. As far as this act goes, there
can be no valid distinction between the farmer who
hauls his hay to market in his own wagon, and the
appellee who hauls its own oil to its customers in its
own tank; one is no more within the spirit of the
statute than the other. Drummers now travel with
a large assortment of trunks, and when they get to
a town they hire a room and display their samples. If
a large house should own a car in which these samples
were displayed, and, instead of the expense of haul-
ing the trunks and opening and displaying the sam-
ples at every town, should send a drummer out in
a car and let him use the car to display his samples,
would it be contended that that firm or company
should be taxed under article 4? If a farmer ran
100 of his own wagons hauling his own hay, or a
mercantile house put out 500 drummers in such cars
with its own samples, would it affect the application
of the statute? In other words, does the operation
of the statute depend on the quantity of his own
goods the owner hauls? If so, where will you draw
the line? And by what authority do you draw it
there? Again, a great many men own private cars

in which they take trips from time to time, and in which they live more or less while on the journey, and carry no little freight and baggage. Nearly all circuses that travel through the country now own their own cars and simply hire the railroads to pull them. Not a few theatrical companies travel in the same way. But did any one ever suppose that these people were in the transportation business within the meaning of article 4? A large number of the coal mines of the state are operated by the owners, who bring out the coal in cars to a tipple, which is sometimes several miles from the mouth of the mine. Are these people in the transportation business, and to be taxed under article 4? And, if not, why not, if appellee may be taxed? No distinction can be made which rests on the size of the vehicle or the fact that it runs on a track. A corporation doing a public service business would fall under the statute, though it used vehicles smaller than the farmer's wagon and requiring no track to run on. The distinction must rest on the character of the business, and to say that the statute applies to all those engaged in the business of carrying their own goods is entirely to abandon the position heretofore expressly held by the court that it applies only to public service corporations, and to make it include practically not only all industrial corporations, but the majority of natural persons engaged in the business of producing. If appellee is taxable under the statute, why must not the grocer who delivers his goods to his customers in his wagons be taxed under it? The court undertakes to lay down no rule by which in future it may be determined how a given corporation may be taxed, and if the rule heretofore laid down by the court is discarded, and it is held that the statute includes the

carrying business and all carrying of goods either by the owner or by anybody else, who is it that will be exempt from the operation of this section, for who does not carry his own goods? The court cannot mean to say that the statute has any special reference to carrying by a car, rather than in any other vehicle, for certainly a corporation who carried in automobiles or launches for the public would be a like company to those named in the statute. The application of the statute cannot depend upon the character of vehicle used, and, if it does not depend upon this, where can you draw a line when you discard the rule which the court has heretofore laid down?

The case of Louisville Tank Line v. Commonwealth, 123 Ky. 81, 93 S. W. 635, 29 Ky. Law Rep. 257, lends no support to the opinion. The appellant in that case was organized to operate as a carrier tank cars. It had a special franchise. It was a public service corporation, organized for this purpose and enjoying all the privileges of such a corporation. It was not engaged in carrying its own goods. It was carrying the goods of others. When a corporation is engaged in the carrying business, it is immaterial under the statute whether it carries for 1 person or 50. The whole oil trade of the state is now in the hands of the Standard Oil Company, and to have exempted the Louisville Tank Line from the statute would have been to allow the application of the statute to depend on the number of persons engaged in the oil business. The holding that the Louisville Tank Line, which is a public service corporation, is taxable under the statute, is no authority for holding that appellee, a mere private corporation, may be so taxed. As this court has heretofore expressly held, appellee is not a like company because it transports

goods on cars as the tank line transports them. The likeness the statute refers to is likeness in serving the public, not in the manner the goods are transported. So a carrier company which carried in the air or in pneumatic tubes under the ground would be a like company, if it had a franchise to carry and was a public service corporation. The likeness is in having the franchise to serve the public or being in the business of serving the public.

Heavy penalties are provided in article 4 for disobedience of its provisions. It is important therefore that people should know for certain who comes under this article, so they may not incur the penalties. This court, that nobody might suffer, undertook to lay down a broad general rule to define who comes under it, declaring that it embraced only the public service companies. When that rule is now departed from, who can tell what persons who trusted the rulings of this court for their guidance will suffer? And when the court thus abandons the rule itself declared, and disregards its own decisions, how is business to be conducted?

For these reasons I dissent from the opinion of the court.

Barker and Lassing, JJ., concur in this dissent.