## State Tax Commission et al. v. Petroleum Exploration.

(Decided June 23, 1933.)

(As Modified on Denial of Rehearing March 13, 1934.)

120

· BAILEY P. WOOTTON, Attorney General, and S. H. BROWN, Assistant Attorney General, and HARRY D. KREMER for appellants.

E. C. O'REAR and ALLEN PREWITT for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

In an action brought for the purpose of testing the question, the Franklin circuit court adjudged that the Petroleum Exploration, a corporation, was not liable for a franchise tax. The state tax commission and the other defendants appeal.

The facts pleaded and admitted by the demurrer which was overruled, are these: The Petroleum Exploration is a Maine corporation, and is authorized by its charter to carry on the business of developing and operating oil and gas lands, and of transporting and marketing the products therefrom. About 90 per cent. of its property and business is in Kentucky. It has several gas wells in Owsley county, and markets the gas by means of an 8-inch main, or pipe, about 63 miles in length. The main passes near, but not within, the towns of Irvine, Ravenna, and Richmond. At these points the gas is sold and delivered wholesale to the Eastern Kentucky Natural Gas Company, in which appellee has no financial interest, which in turn sells and distributes the gas to the inhabitants of those towns. The main also extends to the gates of the city of Lexington, where it is sold wholesale by private contract to the Central Kentucky Natural Gas Company, in which appellee has no financial interest, and which sells and distributes the gas to the inhabitants of that city. Appellee does not transport gas for others, and does not sell directly to the public. At first appellee condemned several tracts of land for its pipe line, but, conceiving that it did not

have the power, it ceased condemnation proceedings, and thereafter secured its right of way by purchase.

ection 4077, Kentucky Statutes, reads in part as follows:

"Every railway company or corporation, gas company, water company, ferry company, bridge company, street railway company, express company, electric light company, electric power company, telegraph company, press dispatch company, telephone company, bus line company, palace car company, dining car company, sleeping car company, chair car company, tank car company, coal car company, *pipe line company,* and every other like company, corporation or association, also every other corporation, company or association having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any public service, shall, in addition to the other taxes imposed on it by law, annually pay a tax on its franchise to the state, and a local tax thereon to the county, incorporated city, town, and taxing district, wherein its franchise may be exercised."

Section 3766b-1, Kentucky Statutes, is as follows:

"All corporations or companies organized for the purpose of constructing, maintaining or operating oil or gas well or wells or *pipe line or lines for conveying, transporting or delivering oil or gas, or both oil and gas,* are hereby vested with the right and power to condemn lands and material in this Commonwealth or the use and occupation of so much thereof as may be necessary for constructing, maintaining and operating such pipe line, or lines, and all necessary machinery, pumping stations, appliances and fixtures, including tanks, telephone and telegraph lines, for use in connection therewith, together with rights of ingress and egress to examine, alter, repair, maintain and operate or remove such pipe line or lines, all such being hereby declared to be a public use; and when any such corporation or company desires to construct oil or gas pipe line or lines, or both, for the purpose of conducting, transporting or delivering oil or gas, or both, over the lands of others, shall be unable to contract or agree with the owner or owners, of land or material

necessary for its use for said purposes, it may in the mode prescribed for the condemnation of land for railroads, condemn the use of so much of said land as may be necessary for the purpose of constructing, maintaining and operating such pipe line or lines, and all necessary machinery, pumping stations, appliances and fixtures, including necessary tanks, telephone and telegraph lines, and including rights of ingress and egress to examine, alter, repair, maintain and operate or remove the same.''

Appellee's position may be summarized as follows: Section 4077, Kentucky Statutes, supra, applies only to corporations engaged in public service or having some special or exclusive privilege not allowed by law to natural persons, and does not apply to ordinary commercial or private trading corporations. Louisville Tobacco Warehouse v. Commonwealth, 106 Ky. 165, 49 S. W. 1069, 20 Ky. Law Rep. 1747, 57 L. R. A. 33; Commonwealth v. Louisville Transfer Co., 181 Ky. 305, 204 S. W. 92. The commonly understood meaning and the technical meaning of "gas company" or "pipe line company" is public utility gas company or public carrier pipe line company. Humphreys v. Central Kentucky Natural Gas Co., 190 Ky. 733, 229 S. W. 117, 21 A. L. R. 664; Hall v. Cumberland Pipe Line Co., 193 Ky. 728, 237 S. W. 405. It is argued that appellee is neither a gas company nor pipe line company within the meaning of the statutes, because it does not transport gas belonging to others, but transports only its own gas, which it does not sell to the public, but sells by private contract to two companies in which it has no financial interest. The further point is made that, if it be held that the foregoing statutes apply to appellee, they will violate our Bill of Rights and the due process and equal protection clauses of the Fourteenth Amendment to the Federal Constitution, by arbitrarily making appellee a public utility and taxing it as such when other private businesses are not so taxed. Smith v. Cahoon, 283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264.

It must be conceded that, if appellee is exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or is performing a public service, it is liable for a franchise tax. By section 3766b-1, Kentucky Statutes, supra, the power of eminent domain is conferred on "all corporations or companies organized for the purpose of constructing,

maintaining or operating oil or gas well or wells or pipe line or lines for conveying, transporting or delivering oil or gas, or both oil and gas.'' When the Legislature has declared a public use, the presumption is in favor of its action, and the burden is on him who asserts the contrary. Cooley on Constitutional Limitations, 657; Olmstead v. Camp, 33 Conn. 532, 89 Am. Dec. 221; Reddall v. Bryan, 14 Md. 444, 74 Am. Dec. 550. The right of eminent domain has often arisen where it was sought to condemn land for the purpose of generating and transmitting electricity for public use, and in such cases the power has been invariably upheld. Walker v. Shasta Power Co., 160 F. 856, 87 C. C. A. 660, 19 L. R. A. (N. S.) 725; Alabama Interstate Power Co. v. Mt. Vernon-Woodberry Cotton Duck Co., 186 Ala. 622, 65 So. 287, affirmed in 240 U. S. 30, 36 S. Ct. 234, 60 L. Ed. 507; Northern Light & Power Co. v. Stacher, 13 Cal. App. 404, 109 P. 896; Smith v. Kentucky & W. Va. Power Co., 207 Ky. 401, 269 S. W. 310. The question in this case is, Does it make any difference if appellee does not sell directly to the public, but sells to others who, in turn, sell to the public?

In State ex rel. Dominick v. Superior Court, 52 Wash. 196, 100 P. 317, 318, 21 L. R. A. (N. S.) 448, the Supreme Court of Washington held that the generation of electricity for sale for public and municipal lighting, and for the operation of street railways, is a public use, in aid of which the power of eminent domain may be exercised. In the course of the opinion the court said:

> ''Does the fact that the respondent will sell and deliver a portion of its electrical power to third persons and corporations, to be by them used for public and municipal lighting and in the operation of railroads and railways, afford a sufficient reason for denying to it the right of eminent domain? We think not. Courts look to the substance rather than to the form, to the end rather than to the means. If in the end the property is devoted to a public use, the mere agency or instrumentality through which that result accomplished is a matter of no concern.''

In the more recent case of Nichols v. Central Virginia Power Co., 143 Va. 405, 130 S. E. 764, 44 A. L. R. 727, the court held that the furnishing of electric power by a duly incorporated corporation without reservation

124

of private benefit, to a public service corporation, which in turn furnishes the same electric power to the public, is a public use, for the furtherance of which the corporation may be invested with the power of eminent domain. In Washington Water Power Co. v. Waters (C. C.) 186 F. 572, the court held that a corporation organized to generate and furnish electric energy was a public service corporation authorized to exercise the right of eminent domain, though it did not render a service directly to the public, but furnished electricity for distribution to the consumers by other persons and corporations. This court has taken the same view of the question. Thus in Calor Oil & Gas Co. v. Franzell, 128 Ky. 715, 109 S. W. 328, 33 Ky. Law Rep. 98, 36 L. R. A. (N. S.) 456, it was held that the right of the Calor Oil & Gas Company to condemn land for pipe line purposes was not affected by the fact that it proposed to sell all of its gas to the Louisville Gas Company, and in this way to distribute it. Manifestly the case is not one where appellee is engaged in a private business. That would be true if it merely piped its own gas from its gas fields for its own use or for the sole use of a particular corporation, but that is not the case. Its pipe line is the connecting link between the gas fields and the public. Without this service the gas would not be available to the inhabitants of the four towns. In short, its business is the transportation of gas for ultimate consumption by the public, and, according to the weight of authority, it is performing a public service and has the power of eminent domain, although it does not sell directly to the consumers, but sells to others, who in turn sell and distribute the gas to the public.

So far the liability of the appellee for the franchise tax has been considered with regard only for the nature of its business as one of public service and somewhat independent of the specific terms of section 4077 of the Statutes, providing without any qualification for the imposition of a tax. It is to be noted in the first group, including pipe line companies and gas companies specifically, that the statute does not undertake to define or qualify the various companies or to confine the tax to any particular character of business in which they may be engaged. It unqualifiedly requires the payment of the annual tax by every such company. The second group, connected with the first by the word "also," are those exercising special or exclusive privileges not al-

lowed natural persons or which perform some public service. The question is presented by the argument, as we have stated, whether this specific part of the statute applies to the appellee.

Whether it would apply to a company engaged in piping its produce for its own use or for the sole use of a private customer is not a matter of concern here. Having come to the conclusion that the facts of the case show the appellee to have been performing a public service, we have no doubt that it is a ''pipe line company'' within the meaning and intention of the statute, for as said in Louisville Tank Line Company v. Commonwealth, 123 Ky. 81, 93 S. W. 635, 29 Ky. Law Rep. 258, the Legislature intended to lay the tax upon all the enumerated companies expressly mentioned in that section and clearly meant to bring under the tax all persons or companies engaged in any particular business named.

The statute does not call the tax a franchise tax, but imposes an additional tax ''on its franchise.'' We do not regard this as requiring that there must have been previously acquired from some governmental agency a special license or permission to transact its business, which is usually denominated a franchise. The word ''franchise'' in our Statutes is not always employed in the strict technical sense. In this jurisdiction what is usually called a franchise tax is an ad valorem, as contradistinguished from an excise or privilege, tax. It is a tax levied upon the intangible values inhering to the business and the added value given to the tangible property. We may repeat this recent statement, made in reference to the statute under consideration, in State Tax Commission v. Central Greyhound Lines, 252 Ky. 300, 67 S. W. (2d) 35:

> ''In an unbroken line of cases coming before us, since the enactment of the statute, supra, we have held that the tax thereby imposed, and which for lack of a better name has been designated as a 'franchise' tax, has been held to be a property tax subject to ad valorem taxation the same as is *tangible* permanently located property within the commonwealth.''

An intangible estate springs from the vested power of eminent domain, the privilege of public service, and other conceivable rights enjoyed by the appellee. It is property no less than is its right of way, the line itself,

and other physica_ possessions. All is protected by the law, and all should bear its just proportion of the tax burdens. It is that intangible estate that is made .subject to the tax provided by the Statutes under consideration.

The court is led to the conclusion, unerringly, as we believe, that the appellee is liable for the tax sought to be collected from it.

Wherefore the judgment is reversed and the cause remanded, with directions to enter judgment in conformity with this opinion.

Whole court sitting.