**PRODUCERS PIPE LINE CO. v. MARTIN, Commissioner of Revenue for Kentucky, et al.**

District Court, W. D. Kentucky.
Feb. 8, 1938.

Arthur D. Kirk and Wilbur K. Miller, both of Owensboro, Ky., for complainant.

Hubert Meredith, Atty. Gen., and Jesse K. Lewis and A. E. Funk, Asst. Attys. Gen., for defendants.

HAMILTON, District Judge.

This case is pending on a motion to dismiss plaintiff's petition, because of a lack of equity.

The plaintiff, the Producers Pipe Line Company, is a Delaware corporation, authorized to transact business in Kentucky. It owns, maintains, and operates a pipe line and also river equipment, including barges, for the transportation of oil. It uses its pipe line for the transportation of oil from fields contiguous to Daviess county, Ky., and from there by barges to the plant of the Louisville Refining Company, a corporation at Louisville, Ky., engaged in the business of manufacturing and selling gasoline and its by-products.

The plaintiff purchases crude oil at the tanks of producers in the field where its pipe line begins and transports through its lines the oil thus acquired. It is not a common carrier.

The defendants J. W. Martin, Commissioner of Revenue for the Commonwealth of Kentucky, and the Kentucky State Tax Commission, composed of James W. Martin, Commissioner, Emory G. Dent, Associate Commissioner, and C. M. C. Porter, Associate Commissioner, are charged under the laws of the Commonwealth of Kentucky with the duty of fixing the value of corporate franchises, the place or places where local taxes are to be paid by corporations on such franchises, and the apportionment of taxes among local units of government.

It is charged in the petition that the defendants, acting in their official capacity, have determined that the plaintiff is subject to assessment and payment of taxes under the provisions of section 4077 of Carroll's Kentucky Statutes, 1936 Edition, which is as follows:

"*Franchise; assessment of.*—Every railway company or corporation, gas company, water company, ferry company, bridge company, street railway company, express company, electric light company, electric power company, telegraph company, press dispatch company, telephone company, bus line company, palace car company, dining car company, sleeping car company, chair car company, tank car company, coal car company, pipe line company, and every other like company, corporation or association, also every other corporation, company or association having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any public service, shall, in addition to the other taxes imposed on it by law, annually pay a tax on its franchise to the state, and a local tax thereon to the county, incorporated city, town, and taxing district, wherein its franchise may be exercised.

"The state tax commission shall constitute a board of valuation and assessment for fixing the value of said franchise, the place or places where such local taxes are to be paid by each such corporation on its franchise and how the assessment shall be apportioned, where more than one jurisdiction is entitled to a share of such tax, and for the discharge of such other duties as may be imposed on them by law.

"It shall be the duty of the attorney general, when requested by the state tax commission, to attend its meetings and advise with same in its proceedings. (March 15, 1906, c. 22, p. 88, Art. IV, subd. I, § 1, as amd. March 22, 1926, c. 75 p. 208.)"

The plaintiff insists it is not one of the taxpayers defined under the statute and that defendants are proceeding without statutory authority in assessing and collecting taxes from it on its so-called franchise.

Plaintiff alleges defendants are proposing to assess, levy, and collect from it for the tax year 1936 more than $15,000 in taxes by an unwarranted assessment on the valuation of its franchise, and further alleges, that, if it does not comply with the demands of the defendants, they will cause it to be indicted in the Franklin circuit court and seek to recover from it a fine of $1,000 and $50 per day penalty for each day after October 1, 1936, if the plaintiff refuses to comply with their demands. See sections 4078 and 4082, Carroll's Kentucky Statutes, 1936 Edition.

The defendants move to dismiss solely on the ground that the plaintiff is one of the corporations defined as subject to a franchise tax, under the statutory laws of the Commonwealth of Kentucky. The jurisdiction of the court is conceded by the defendants, and they admit that, if the statute under which the taxes are sought to be levied is not applicable to the plaintiff, it is entitled to the relief sought.

■ The act under which the taxes here complained of are proposed to be assessed and collected, Kentucky Statutes Carroll's Edition 1936, §§ 4077 to 4097, inclusive, makes no provision for the refundment of illegal exactions under it. The plaintiff is without remedy at law to test the validity of the assessment or collection except by a proceeding in equity. The requisite diversity of citizenship appearing from the petition

and a sufficient remedy at law being absent, the Court has jurisdiction.

■ The act under which the defendants are proceeding is not applicable to every corporation. While it enumerates several types, among which is "pipe line company," it is not intended by its terms to tax all corporations doing business in the commonwealth, but only those exercising some special or exclusive privilege or performing some public service, not allowed by law to natural persons.

■■ A corporation may have three types of franchises: First, the right to organize and exist as a corporation; second, the right to act generally as a corporation; and, third, the special privileges granted it which are not possessed by individuals under general law. The right to exist as a corporation is not transferable, and therefore usually has no ascertainable cash value for the purpose of measuring taxes.

■■ The second type of franchise is applicable to all corporations, and, because of the facility and ease by which a corporation may be formed under modern laws, has no readily ascertainable cash value. The third type consists of exceptional privileges, usually disassociated in value from the tangible assets of the corporation and not generally enjoyed by individuals, and a modified type of monopoly which has, in most instances, a fair cash value and can be sold by the corporation without impairing or destroying the value of the remaining types of the franchises enumerated.

In the complexity of modern business, a vast part of the wealth of a community consists in intangible property, and, if the tax burden is to bear equally on the class of taxpayers best able to pay, a way must be found to tax the intangible special franchise of corporations.

The statute here in question contains one of the many plans devised by the ingenuity of tax officials to reach intangible wealth. The method employed in the application of the statute to determine the tax excludes the possibility of double taxation. The statute is free from ambiguity, and the test of its application is simple.

■ To come within the terms of the statute, the corporation must enjoy a special or exclusive privilege not allowed by law to natural persons. If the plaintiff has the power to exercise the right of eminent domain under the laws of the Commonwealth of Kentucky, it comes within the taxing statute, otherwise not.

Section 3766b-1 of Carroll's Kentucky Statutes, 1936 Edition, confers the right of eminent domain on corporations organized for the purpose of constructing, maintaining, or operating oil or gas wells, or pipe line or lines for conveying, transporting, or delivering oil or gas or both. The act conferring this power was enacted by the General Assembly of the Commonwealth of Kentucky in 1900, and by its terms is not confined to companies engaged in the business of common carriers. It is stated in the act that the constructing, maintaining, or operating oil or gas wells, or pipe lines conveying oil or gas, is a public use.

The Court of Appeals of Kentucky in the case of State Tax Commission v. Petroleum Exploration, 253 Ky. 119, 68 S.W. 2d 777, 780, 126, had before it the taxability of a franchise of a company engaged in transporting gas from wells owned by it to city gates and there delivered to corporations distributing to consumers in the municipalities. The court held in that case that the corporation possessed an exclusive privilege or special franchise on which it was taxable. The corporation transported gas passed from it into the lines of corporations rendering public service which distinguishes it from the case at bar.

The court expressly refused to determine the applicability of the statute to a pipe line company engaged in operating a line for its sole use, and on this subject said: "Whether it would apply to a company engaged in piping its produce for its own use or for the sole use of a private customer is not a matter of concern here."

■ There is no decision of the Kentucky courts on the application of the taxing statute here involved to a corporation operating a pipe line for its own use or that of a private corporation, and, in the absence of an interpretation of the Statute by the Supreme Court of the state, this court must apply its own interpretation.

■ It is a thoroughly settled principle that the Legislature cannot by legislative fiat take the property of one man and give it to another, because to do so would be a legalized form of robbery, and it is equally well settled that no citizen can be compelled to surrender his property to another against his will, even though he is fully compensat-

ed, unless the taking of the property is for a public use. When, however, we seek the principle upon which the public use is to be determined or to define the phrase "public use," we are on the shifting sands of the shore lines of a legal sea.

There has always been a liberal tendency in the Commonwealth of Kentucky to broaden the definition of "public use," in exercising the right of eminent domain. Under the Revised Statutes adopted in 1852, c. 84, art. 2, § 1, when necessary for a citizen to have a private passway over the land of another "to attend courts, elections, a meeting house, a mill, or a warehouse," the right to condemn was given. In 1873 the above act was amended to extend the right to acquire a passway between two separate tracts owned by the same person or to a railroad depot most convenient to his residence. In 1903 the right of condemnation was extended to acquire landings for ferries and steamboats. In 1904 (chapter 126) it was extended to acquire land for the establishment of a "private tramroad or haul-road" over the land of one or more persons to enable him to reach a warehouse, steamboat, landing, ferry, railroad switch or navigable stream for the purpose of marketing the products of a lead mine, iron works, salt works, coal mine, fire clay and other minerals, oil wells, stone quarry, sand bank, or merchantable forest timber.

The Court of Appeals of Kentucky has fixed the outer barrier of eminent domain to be that all persons have equal rights with equal obligations with the owner to the use of the passway, pipe line, or roadway. Chesapeake Stone Company v. Moreland, 126 Ky. 656, 104 S.W. 762, 16 L.R.A., N.S., 479.

The plaintiff is transporting oil that it acquires from many persons in the oil field and, while there is no showing in the petition that it is a common carrier, if it could be compelled under the laws of the Commonwealth to transport for a reasonable charge oil through its pipe line for any producer in the field where its pipe line originates or through which it passes, it would possess the right of eminent domain.

In the case of Calor Oil & Gas Company v. Franzell, 128 Ky. 715, 109 S.W. 328, 330, 36 L.R.A.,N.S., 456, the appellant, a Kentucky corporation, authorized under its charter to buy and lease oil and gas lands, dig wells, construct pipe lines, and do any and all things connected with such business, sought to condemn a right of way for a pipe line across the right of way of the appellee, Franzell.

It was selling its output of gas to the Louisville Gas Company, a corporation engaged in distributing gas to the citizens of Louisville, under a franchise it held from the city. The Kentucky Heating Company, holding another franchise from the same municipality to use its streets for the distributing of gas, had acquired by deed from Franzell the exclusive right and privilege of laying pipe and pipe lines for any and all purposes across or under his land. It was insisted that this exclusive easement prohibited the condemnation of the land or at least that compensation had to be paid to the Louisville Heating Company. The Court of Appeals, in holding void the exclusive privilege to lay pipe lines, said: "Obviously this contract is void as being in contravention of public policy. This position needs little elucidation or argument. Undoubtedly the public welfare requires the freest competition in all things pertaining to the common interest; and it has always been contrary to law to establish a monopoly such as is involved in the contract between the Franzell's and the Kentucky Heating Company."

It is the fixed rule under the decisions of the Court of Appeals of Kentucky that, before property can be taken, the public must have some right to its use and enjoyment, as distinguished from the absolute control of the individual, and in no case can private property be taken for the use and benefit of another, unless it be necessary to enable him to perform some public service. Chesapeake Stone Company v. Moreland, supra.

The public has no right to the use of the pipe line owned and operated by the plaintiff, and it could not be compelled to allow any person producing oil in the field to use it.

In the case of Producers' Transportation Company v. Railroad Commission, 251 U.S. 228, 232, 40 S.Ct. 131, 132, 64 L.Ed. 239, the State of California declared by statute that every private corporation or individual operating " 'any pipe line or any part of any pipe line * * * for the transportation of crude oil, * * * directly or indirectly, to or for the public, for hire * * *

and which said pipe line * * * is constructed or maintained upon, along, over or under any public highway, and in favor of whom the right of eminent domain exists,' shall be deemed a common carrier and subject to the provisions of a prior act investing the Railroad Commission with extensive powers over the rates and practices of those who operate public utilities. Stats.1913, c. 327; Stats. 1911, Ex.Sess., c. 14."

This company was operating a pipe line constructed solely to carry crude oil for particular producers from their wells to the sea coast under private contracts. The Railroad Commission undertook to regulate its charges. The court in denying the right of the commission to do so, said: "It is, of course, true that if the pipe line was constructed solely to carry oil for particular producers under strictly private contracts and never was devoted by its owner to public use, that is, to carrying for the public, the state could not, by mere legislative fiat or by any regulating order of a commission, convert it into a public utility or make its owner a common carrier; for that would be taking private property for public use without just compensation, which no state can do consistently with the due process of law clause of the Fourteenth Amendment."

The plaintiff acquired none of its right of way by condemnation. It does not hold itself out as a common carrier. There is no statutory law of the Commonwealth of Kentucky giving the public the right to use plaintiff's pipe line independent of its permission.

Before the plaintiff would have the right to condemn under the laws of the Commonwealth of Kentucky, notice would have to be given by it that the public generally would have the right to the use of the pipe line.

There is nothing in the record showing the plaintiff is carrying on a business impressed with a public character. It does show that it is carrying on a private business for the emolument of its owners and stockholders and that the public has no interest whatever in its operations.

As the plaintiff does not possess or exercise any special or exclusive privilege or franchise not allowed by law to natural persons, or perform any public service, it is not subject to assessment under the statute on which the defendants rely. The motion to dismiss will be denied.